GENARO ALONSO FONSECA, demandante y apelante *v.* RAMONA MUÑOZ SANTANA VDA. DE JOSÉ ALONSO GONZÁLEZ, y JOSÉ JULIÁN, JOSÉ RAMÓN, JOSÉ MANUEL y JOSÉ JUAN ALONSO MUÑOZ, demandados y apelados.

Número 10913.

*Sometido:* 1 de marzo de 1954. *Resuelto:* 17 de mayo de 1954.

*Santos P. Amadeo* y *R. V. Pérez Marchand,* abogados del apelante; *Fiddler, González & Nido,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

El 14 de diciembre de 1949 Genaro Alonso Fonseca presentó en la anterior Corte de Distrito de San Juan una demanda sobre Partición de Herencia y Rendición de Cuentas y Frutos, en que alegó ser hijo natural reconocido de José Alonso González, causante de los demandados, su viuda e hijos legítimos; que José Alonso González falleció el 12 de enero de 1910, bajo testamento en que instituyó como sus únicos herederos a los demandados; que el 27 de marzo de 1916 la anterior Corte de Distrito de San Juan dictó sentencia declarando al demandante hijo natural de dicho causante, habiendo el demandante nacido antes de contraer nupcias el causante con la codemandada Ramona Muñoz Santana, viuda de Alonso, anulándose en esa sentencia el testamento ya mencionado, por haber preterido al demandante; que el día 2 de septiembre de 1913 los demandados otorgaron una escritura de división del caudal hereditario, con exclusión del demandante, quedando ella en posesión del caudal como administradora del mismo; que los bienes objeto de la partición tenían un valor (según una demanda enmendada) de $2,000,000; que los demandados han usufructuado todos esos bienes, no habiendo el demandante recibido frutos o rentas de clase alguna, debiendo él haber obtenido la suma de $485,689.74 en concepto de tales frutos y rentas.

En su contestación, entre otras defensas especiales, los demandados alegaron que "si algún derecho tenía el demandante en este caso para reclamar participación hereditaria

en los bienes relictos al fallecimiento de José Alonso González, la acción de partición resulta improcedente y caduca, y cualquier derecho que a su amparo se pretenda ejercitar, se ha extinguido debido a la falta de actualidad de la proindivisión por haber estado los demandados en la posesión ininterrumpida del caudal hereditario, en concepto de dueños y con exclusión del demandante, durante más de treinta (30) años en lo que a bienes inmuebles se refiere, y durante más de seis (6) años respecto a los bienes muebles".

Después de varios incidentes, y en un recurso de *certiorari*, este Tribunal resolvió y ordenó que se celebrase previamente, en el Tribunal de San Juan, un juicio por separado en cuanto a la cuestión de prescripción planteada por los demandados. *Muñoz* v. *Tribl. de Distrito*, 72 D.P.R. 842. Se celebró el juicio sobre esa cuestión, y después de considerar la prueba testifical y documental presentada por ambas partes, la Sala de San Juan del Tribunal Superior resolvió que los demandados habían adquirido el dominio sobre los bienes aquí envueltos por prescripción adquisitiva, por haber poseído los demandados esos bienes en concepto de dueños, con exclusión del demandante, por más de treinta y de seis años. En su consecuencia, el Tribunal de San Juan dictó sentencia declarando sin lugar la demanda. El demandante ha apelado ante este Tribunal, refiriéndose la controversia a la cuestión de si los demandados han adquirido un pleno dominio sobre los bienes aquí envueltos en virtud de una prescripción adquisitiva extraordinaria, habiendo el demandante, por lo tanto, perdido todos sus derechos sobre tales bienes, y habiendo quedado destruído su derecho a instar una demanda de partición y recuperación de frutos.

De acuerdo con las conclusiones de hecho formuladas por el tribunal a quo, con la prueba presentada y las estipulaciones de las partes hechas en el transcurso del juicio, los hechos, en síntesis, son los siguientes:

El demandante nació el 19 de septiembre de 1892, y en el año 1893 José Alonso González se casó con la codeman-

dada Ramona Muñoz Santana. De ese matrimonio nacieron los codemandados, hijos legítimos. El 12 de enero de 1910 falleció José Alonso González, habiendo otorgado un testamento abierto, en que designó a su viuda y a sus hijos legítimos como sus únicos herederos. El 2 de septiembre de 1913 la codemandada y los hijos legítimos, representados éstos por un defensor judicial, otorgaron una escritura en que se adjudicó a la viuda y codemandada, en pago de su cuota vidual y de su participación en los bienes gananciales, ciertas cantidades de dinero en efectivo y ciertos créditos que fueron específicamente designados. El resto de los bienes, que también fueron específicamente designados, fueron adjudicados a los hijos legítimos "por partes iguales y en proindiviso", a base de una quinta parte cada uno. El demandante fué excluído de estas adjudicaciones.

El 23 de noviembre de 1915 el demandante presentó una demanda de filiación contra la Sucesión de José Alonso González y reclamó su participación en la herencia relicta de dicho causante. El 27 de marzo de 1916 la extinta Corte de Distrito de San Juan dictó sentencia declarando al aquí demandante hijo natural reconocido de José Alonso González; anulando su testamento, en cuanto a la institución de herederos y anulando la escritura de 2 de septiembre de 1913. La sucesión demandada apeló de esa sentencia. Estando pendiente la apelación, la codemandada Ramona Muñoz viuda de Alonso y el aquí demandante otorgaron, el 19 de julio de 1916, una escritura de "venta y cesión de derechos y acciones" en que las partes indicaron que habían convenido en transigir todas las reclamaciones envueltas en la acción entablada por el demandante, que estaba pendiente de apelación, y todas las demás reclamaciones que pudiese él tener contra la sucesión mencionada que surgiesen como consecuencia de ese litigio; que el demandante Genaro Alonso Fonseca "vende, cede, renuncia y traspasa a favor de la otra compareciente doña Ramona Muñoz y Santana, viuda de don José Alonso González, que los adquiere a nombre propio, todos los

derechos y acciones que aquél tuvo, tiene y pueda en el futuro corresponderle en los bienes hereditarios relictos al fallecimiento del citado don José Alonso González". Se siguió indicando que "el propio señor Fonseca, en consideración al precio de adquisición que por aquellos recibe, renuncia también, desiste y se aparta de todo derecho a reclamar judicial o extrajudicialmente su declaración como hijo natural reconocido o de otra suerte, del fenecido Alonso González; obligándose a desistir y por la presente da por abandonada y desistida la mencionada acción judicial hoy pendiente . . . renunciando a su vez a cualquier derecho o beneficio que resulte o pueda derivarse de la referida sentencia actualmente recurrida". La cesión y renuncias se verificaron por el convenido precio de siete mil dólares, que recibió el demandante, indicándose "que esa suma que en este acto recibe, representa el justo valor que en la actualidad para él tiene la participación que pudiera corresponderle en los referidos bienes hereditarios del señor Alonso González". El demandante además ratificó la validez de las operaciones divisorias hechas en la escritura del 2 de septiembre de 1913, "renunciando a todo derecho de impugnación, nulidad y rectificación de las mismas".

El 14 de diciembre de 1949, o sea, más de treinta años después de esa escritura de venta y cesión de derechos de 19 de julio de 1916, Genaro Alonso Fonseca presentó la demanda envuelta en esta apelación. Los demandados solicitaron que se dictase una sentencia sumaria, a base de la escritura de 19 de julio de 1916. El Tribunal de San Juan declaró sin lugar la moción de sentencia sumaria, decretando que era nula tal escritura de 1916, en vista de que en ella el demandante renunciaba, en forma inválida, a su *status* como hijo natural, siendo inseparable tal renuncia ilegal de la venta de su participación en los bienes. Tal dictamen no ha sido impugnado y está en pie, a los fines de esta apelación. Posteriormente, se dictó la sentencia aquí apelada.

Aunque, como cuestión de derecho, son nulas las escrituras del 2 de septiembre de 1913 y del 19 de julio de 1916, como cuestión de hecho los codemandados, hijos legítimos de José Alonso González, estuvieron en la posesión de los bienes aquí envueltos por más de treinta años antes de la radicación de la demanda aquí presentada, habiendo poseído realmente tales bienes en común y proindiviso, como condueños o coherederos, con exclusión del demandante, quien no participó en esa posesión real. Los hijos legítimos, por sí o a través de su madre, la codemandada, viuda de Alonso, como administradora de los intereses proindiviso de ellos, obtuvieron para sí y en su nombre propio, y en su exclusivo beneficio, la totalidad de los productos, rentas y utilidades de los bienes; pagaron las contribuciones sobre los bienes y llevaron a cabo diversas transacciones relacionadas con esos bienes, por más de treinta años. El demandante no participó en ninguna de esas transacciones u operaciones, no participó en la obtención de los frutos y beneficios derivados de los bienes, y no participó en forma alguna en el pago de las cargas. Fué debido a ello que el Tribunal de San Juan resolvió que los hijos legítimos habían poseído los bienes en concepto de dueños por más de treinta años, consolidándose en ellos el pleno dominio sobre los bienes, quedando así destruídos los derechos del demandante. Lo que alega el demandante y apelante es que el hecho de que la posesión de los hijos legítimos fué en forma proindivisa implica que la acción de partición que correspondería a un condueño, como lo era el demandante, nunca prescribiría, no siendo aplicable a ese caso de proindivisión la disposición estatutaria relativa a la adquisición del dominio por la posesión por más de treinta años en concepto de dueño. Los demandados apelados a su vez alegan que si bien es cierto que la posesión fué proindivisa entre los hijos legítimos, el demandante no participó en esa posesión real proindivisa, y que, con respecto al demandante, los hijos legítimos poseyeron en concepto de dueño con exclusión del demandante. Admiten los demandados que si la totalidad de los

condueños participan en una posesión proindivisa, la posesión material de un condueño en beneficio de los demás condueños no implica que el condueño que sea el poseedor inmediato adquiera por prescripción contra los otros, pero que si alguno o algunos de los condueños poseen, por más de treinta años, los bienes en su propio nombre, interés y beneficio, como si ese o esos condueños fuesen los únicos dueños, quedando excluídos los otros condueños de los beneficios y cargas de esa posesión, entonces los condueños que han poseído en concepto de dueño con exclusión de los demás condueños, han adquirido el pleno dominio en virtud de la prescripción adquisitiva extraordinaria.

 Tienen razón los demandados. Por vía de orientación preliminar, formulada en términos sencillos, suponiendo siempre una posesión por treinta años, de existir una situación de posesión proindiviso, ya sea por la totalidad de los condueños o coherederos o por uno o algunos de ellos en nombre y en beneficio de los otros, el poseedor o poseedores inmediatos o materiales no estarían poseyendo en concepto de dueños exclusivos, sino que estarían poseyendo en concepto de condueños y, por lo tanto, ellos no podrían adquirir el dominio por prescripción adquisitiva extraordinaria, y la acción correspondiente a los otros condueños para solicitar la partición o división de los bienes no estaría sujeta a la prescripción extintiva. En ese caso, además, la posesión de un condueño en nombre de y para beneficio de los demás, aprovecharía a los demás a los fines de la prescripción adquisitiva por la totalidad de los condueños, pero no aprovecharía personal y exclusivamente al condueño que sea el poseedor material, a los fines de él adquirir el dominio para sí mismo, ya que él no estaría poseyendo en nombre propio. Pero si uno de los condueños posee, por más de treinta años, una finca específica de la comunidad, o la totalidad de los bienes comunes, en forma exclusiva y en nombre propio, percibiendo solamente él los beneficios, frutos y productos de tal finca o de tales bienes, sin que los demás condueños participen en los bene-

ficios y cargas de tal posesión, entonces ese condueño estaría poseyendo en concepto de dueño, y podría adquirir el dominio en virtud de la prescripción adquisitiva extraordinaria. En la misma forma, si de seis condueños dos de ellos poseen por más de treinta años en nombre y beneficio propio, en concepto de dueños, con exclusión de los otros cuatro en cuanto a los beneficios y las obligaciones inherentes a la posesión, entonces esos dos condueños adquirirían el dominio por prescripción adquisitiva extraordinaria, quedando destruído el derecho de los otros cuatro a solicitar la partición. En la misma forma, si, como ocurre en el caso de autos, cinco de sies condueños han poseído por más de treinta años en concepto de dueños, con exclusión del otro condueño, entonces el pleno dominio habría sido adquirido por los cinco condueños, poseedores materiales en concepto de dueños, y el sexto condueño excluído no podría ya solicitar la partición o división de los bienes comunes.

■■ El art. 1865 de nuestro Código Civil dispone lo siguiente:

"No prescribe entre coherederos, condueños o propietarios de fincas colindantes la acción para pedir la partición de la herencia, la división de la cosa común o el deslinde de las propiedades contiguas."

Como veremos más adelante, la aplicabilidad de este último artículo está subordinada a las disposiciones contenidas en los arts. 1859 y 1841, en conexión con el 376 del mismo cuerpo legal, referentes a la adquisición del dominio en virtud de una posesión en concepto de dueño, no interrumpida durante treinta años. Armonizando los artículos citados del Código Civil, no prescribe entre coherederos o condueños la acción para pedir la partición o división siempre y cuando que exista una situación total de proindivisión, pero si uno o más coherederos o condueños han poseído en concepto de dueño por más de treinta años, en forma no interrumpida, ello implica la ausencia de una verdadera proindivisión y la inaplicabilidad del art. 1865.

Comentando el art. 1965 del Código Civil de España, que corresponde al 1865 nuestro, se dice lo siguiente, en 12 Manresa 921, 922 (5ta. ed. rev.) :

"Es noción elemental, que no tenemos que explicar ni justificar ahora, que las acciones pueden ser de distintas clases, según sea el derecho amparado por las mismas o para cuyo ejercicio estuvieren establecidas por la ley, distinguiéndose generalmente por la doctrina en reales, personales y mixtas.

"En cuanto a estas últimas, de acuerdo con la jurisprudencia establecida con anterioridad a su publicación, el Código ha venido a declararlas en cierto modo imprescriptibles, estableciendo en su art. 1.965, según tenemos ya dicho, que no prescribe entre coherederos, condueños o propietarios de fincas colindantes la acción para pedir la partición de la herencia, la división de la cosa común o el deslinde de los predios contiguos. Esos mismos principios los había establecido ya el Tribunal Supremo, acomodándose a la naturaleza de la prescripción extintiva, siendo muy digna de mención la sentencia dictada en 22 de diciembre de 1860, según la que no cabe prescripción entre los condueños.

"Sin embargo, la imprescriptibilidad de la acción para pedir la división de la herencia, conocida en el Derecho romano con el nombre de *familiae erciscundae,* no puede invocarse cuando uno de los coherederos ha poseído toda la herencia en concepto de dueño y por tiempo suficiente para ganarla por prescripción, porque la expresada acción descansa necesariamente en la posesión de consumo o proindiviso de los bienes hereditarios, según se halla reconocido por el mismo Tribunal en sentencias de 15 de abril de 1904 y 6 de junio de 1917. También tiene declarado éste, en sentencia de 21 de mayo de 1904, que 'probado a juicio del Tribunal a quo, que no pertenecían a una herencia indivisa los bienes controvertidos, sino que eran propiedad individual de determinada persona, no puede invocarse útilmente contra ésta el principio de la imprescriptibilidad de la acción antes citada'; cuyo principio es el fundamento de la prohibición consignada, en cuanto a la misma, en el mencionado art. 1.965. Además, debe tenerse en cuenta que, como se halla declarado en sentencias del propio Supremo Tribunal de 15 de enero de 1902 y 22 de junio de 1904, la acción entre coherederos o condueños para pedir la partición de la herencia o la indivisión de un fundo, a que se refiere dicho artículo, es independiente de la acción reivindicatoria ejercitada sobre la propiedad *pro solido*

del mismo fundo, y realmente si de lo que se trata es de reivindicar bienes de la herencia o parte alguna de finca común y no de la partición de ellos, no será aplicable la prohibición contenida en el artículo citado.

"La sentencia de 7 de julio de 1930 se desvía de la doctrina anterior. Y la de 15 de abril de 1932 dice que la imprescriptibilidad está subordinada a que en tiempo hábil se haya ejercitado la *petitio hereditatis.*"

Los arts. 1005 y 1006 de nuestro Código Civil disponen lo siguiente:

"Artículo 1005.—Ningún coheredero podrá ser obligado a permanecer en la indivisión de la herencia, a menos que el testador prohiba expresamente la división. Esta prohibición no alcanzará a los bienes que constituyen la legítima de los herederos.

"En todo caso, la división tendrá siempre lugar mediante alguna de las causas por las cuales se extingue la sociedad.

"Artículo 1006.—Todo coheredero que tenga la libre administración y disposición de sus bienes, podrá pedir en cualquier tiempo la partición de la herencia.

"Por los incapacitados y por los ausentes deberán pedirla sus representantes legítimos."

Interpretando los arts. 1051 y 1052 del Código Civil de España, que corresponden a los 1005 y 1006 nuestros, se dice lo siguiente, en 7 Manresa 616 y siguientes (sexta ed. rev.):

"(E) Aun sin mediar pacto, ni sociedad, ni disposición contraria del testador, y aunque la partición no se haya practicado, no por ello puede afirmarse tampoco en absoluto que los coherederos pueden reclamar *en cualquier tiempo* la partición.

"La acción procedente es la llamada *familiae erciscundae,* en su esencia idéntica a la acción *communi dividundo,* la cual es imprescriptible con arreglo al art. 1.965.

"Sin embargo, esta acción no puede ejercitarse cuando un tercero posee los bienes de la herencia. En tal caso, la acción procedente en primer término será la de petición de herencia, cuya duración es de treinta años, pero que habrá de ejercitarse antes de que el tercero adquiera los bienes por prescripción. Si ésta afecta sólo a ciertos bienes, puede pedirse la división en cuanto a los demás. Esta doctrina ha sido sancionada por el

Tribunal Supremo en numerosas sentencias, entre otras en la de 31 de mayo de 1899, declarando que es prescriptible la acción entre coherederos para pedir la división de la herencia cuando alguno de ellos ha poseído como dueño los bienes a ella correspondientes, pacífica y públicamente, por más de treinta años.

¿Puede ocurrir que uno de los coherederos prescriba a su favor todos o alguna parte de los bienes hereditarios, impidiendo en todo o en parte la acción de división de herencia? Aunque esta cuestión se relaciona íntimamente con el art. 1.965, necesario es resolverla brevemente en este lugar.

"El art. 915 del proyecto de Código de 1851 decía: 'La acción para pedir la partición de la herencia expira a los treinta años contra el heredero que ha poseído el todo o parte de ella en nombre propio y como señor universal y particular. Si todos los coherederos poseyesen en común la herencia o alguno de ellos en nombre y como cosa de todos, no tiene lugar la prescripción.'

"Esta doctrina es la admitida en la generalidad de los códigos. ¿Cómo puede hacerse compatible con el principio de la imprescriptibilidad de la acción de partición? Es muy sencillo. Dicha acción no prescribe nunca por el solo transcurso del tiempo, siendo indiferente que los bienes se posean por uno o por varios coherederos y sus sucesores durante cien o doscientos años en concepto de comuneros. No hay, pues, prescripción simplemente *extintiva* para el ejercicio de la acción.

"Pero es necesario armonizar esta doctrina con la de la prescripción *adquisitiva*, que permite adquirir bienes, aunque sean hereditarios, cuando al transcurso del tiempo se junta una posesión suficiente; es decir, una posesión de los mismos bienes, en concepto de dueño único, separado y exclusivo. Mientras uno de los coherederos posea como tal coheredero, posee en nombre de todos y no puede prescribir: mas si posee como heredero único, aun habiendo varios, o como propietario exclusivo, puede adquirir por prescripción.

"Por otra parte, mientras la cosa proindiviso se posee por los herederos, ya por sí mismo, ya por otro en su nombre, cabe pedir su división. Cuando no se posee de ningún modo, parece más procedente la acción de petición de herencia, la cual tropieza con los mismos inconvenientes; pero es en sí misma prescriptible.

"Ahora bien: si el coheredero posee más bienes de los que corresponderían a su participación, con relación a la parte que no le pertenece de derecho con arreglo a su título, posee sin

título justo y bastante, y medie o no buena fe en ello, necesita treinta años para poder prescribir, con arreglo a los arts. 1.952 y 1.959.

"Con relación a los bienes muebles, la doctrina es la misma. La herencia es una universalidad, ya se componga de cosas muebles o inmuebles, y no cabe prescribirlas por tres o seis años, puesto que lo que se prescribe en realidad no es la cosa, sino el derecho hereditario sobre ella. Además, el principio de que en los bienes muebles la posesión de buena fe equivale al título, es aplicable a las relaciones entre dueño legítimo y terceros poseedores, no a las relaciones entre coherederos o condueños.

"Lo indispensable es la posesión en concepto de propietario exclusivo de los bienes de que se trata. Esa posesión en tal concepto debe probarse suficientemente. En caso de duda, ha de presumirse que el coheredero no posee en nombre propio exclusivamente, sino por sí y en nombre de los demás, como condueño, y no como dueño exclusivo.

"Después de treinta años de posesión exclusiva, a la acción de división de herencia puede oponerse la excepción de prescripción.

"*Lo que se dice con relación a todos los bienes hereditarios y a uno solo de los herederos, es aplicable a algunos de dichos bienes solamente, y a varios herederos. Si dos o más, juzgándose herederos únicos, gozan el caudal, dividiéndolo o no entre ellos, los demás sólo podrán entablar contra los poseedores la acción de división en el caso de que aquéllos no hayan consolidado su derecho en virtud de la prescripción.*

"En resumen, impuesto el estado de comunidad de la herencia por el fallecimiento del causante y la existencia de varios herederos, la ley, que en todo aspira a conceder la mayor libertad posible, faculta a cada copartícipe para pedir en cualquier tiempo la partición, no pudiendo en modo alguno ser obligado por los demás a permanecer en la comunidad. Esta acción es imprescriptible.

"Esto no obstante, la partición puede suspenderse algún tiempo:

"1º Por pacto expreso de los herederos con arreglo al art. 400, o por constituirse entre ellos sociedad con los bienes comunes.

"2º Por disposición expresa del testador, o por haber de seguir la indivisión si ha de ser respetada la voluntad del causante.

"Debe suspenderse en el caso del art. 966.

"No puede pedirse la partición de la herencia:

"1º Cuando ya se hubiese practicado de un modo definitivo.

"2º Cuando los bienes que han de dividirse, o el derecho hereditario sobre ellos, hubiese sido adquirido por prescripción por un tercero, o por uno de los herederos, poseyéndolos en concepto de propietario exclusivo.

"Aunque sin sentar doctrina alguna de interés, se citan los artículos 1.051 y 1.052 en la sentencia del Tribunal Supremo de 8 de julio de 1903, que casando la de la Audiencia hubo de estimar el derecho de un coheredero y copropietario para pedir en cualquier tiempo la herencia objeto del debate." (Bastardillas nuestras.)

Interpretando el art. 1.052 de España, se expone lo siguiente, en 18 Scaevola 242, 243:

"A) *Acción de dividir la herencia común: su naturaleza.*

"La acción *familae erciscundae,* establecida para dividir la herencia común, se dice en el proemio del tít. II, lib. X del Digesto, tiene su origen en la ley de las Doce Tablas, porque, queriendo los coherederos dividir la cosa común, parecía necesario que se constituyese alguna acción por la cual, las cosas hereditarias se dividiesen entre ellos. La herencia, expresa el § 2.º de la ley 1.a de dichos título y libro, ya sea que se adquiera por testamento o sin él, por la ley de las Doce Tablas o alguna otra, o por constitución del Senado, o por otra constitución, se divide por la acción de división de la familia, y generalmente, sólo se puede dividir la herencia de los que la pueden pedir.

"Dice un tratadista español: 'si a los coherederos se les reconoce un derecho, que es el de hacer cesar la comunidad hereditaria en cualquier tiempo y hacerse dueños individualmente de su participación en concreto, natural es que se les otorgue a tal fin la correspondiente acción, que es, según la definía Justiniano, precisamente, *jus persequendi judicio quod nos sibi debetur'.*

"Y de tal naturaleza es esa acción, que el art. 1.965 la declara imprescriptible; aunque, como expresa el 3.460 del Código de la República Argentina, se mantendría esa imprescriptibilidad mientras que de hecho continúe la indivisión, siendo susceptible de prescripción cuando aquélla haya cesado de hecho, porque alguno de los herederos, obrando como único propietario, haya comenzado a poseerla de una manera exclusiva: añadiendo el siguiente artículo que, cuando la posesión referida hubiere sido sólo de una parte alícuota de la herencia o de objetos indi-

viduales, la acción de partición se prescribe respecto a esa parte o a esos objetos, y continuará existiendo respecto a las partes u objetos no poseídos. Por cuya razón determina el art. 967 del Código venezolano que la partición puede pedirse aunque uno de los coherederos haya gozado separadamente de una parte de la sucesión, a menos que se pruebe haberse hecho la partición, o que haya habido una posesión suficiente para la prescripción."

En Castán, Derecho Civil Español, tomo 1, pág. 334 (sexta ed. revisada) se dice:

"D. *Ámbito de la prescripción extintiva.*—Dice el art. 1.930, en su párrafo segundo, que se extinguen por la prescripción 'los derechos y las acciones de *cualquier clase que sean'*. Pero esta regla no es tan absoluta como pudiera creerse. En primer lugar, el Código mismo formula una excepción a ella en el art. 1.965, al decir que *'no* prescribe, entre coherederos, condueños o propietarios de fincas colindantes, la acción para pedir la partición de la herencia, la división de la cosa común o el deslinde de las propiedades *contiguas'.* Esta imprescriptibilidad de las llamadas *acciones mixtas* es tradicional en nuestro derecho. Sin embargo, para que se dé esta imprescriptibilidad es preciso que se cumpla el supuesto implícito en el texto legal, de que se posean los bienes de *consumo o pro indiviso,* pues si uno de los copropietarios o coherederos posee las cosas en nombre propio y por tiempo suficiente para ganarlas por prescripción, dichas acciones prescribirán (sentencias de 31 de mayo de 1899; 15 de abril de 1904; 24 de noviembre de 1906 y 6 de junio de 1917)."

El Tribunal Supremo de España, en su Sentencia del 31 de mayo de 1899 (87 Jurisprudencia Civil 358), resuelve que un coheredero puede ganar por prescripción el dominio exclusivo de los bienes de la herencia, con arreglo a la ley 7a., tít. 14, Partida 6a. En ese caso una coheredera realizó actos de dominio sin oposición de los otros herederos, por más de treinta años; arrendó los bienes y actuó como dueña absoluta, percibiendo productos, levantando cargas y pagando las contribuciones. Esos hechos son análogos a los del caso de autos. Se resolvió que al haber ella poseído en nombre propio y en concepto de dueña exclusiva, ella había adquirido el dominio por prescripción, en contra de los otros condueños.

En la sentencia del mismo tribunal del 15 de abril de 1904, (98 J. C. 121) se resolvió que no había prescrito la acción para pedir la división de una herencia, ya que faltaban datos para afirmar que los bienes hubiesen sido poseídos por alguno de los coherederos individualmente y en concepto de dueño, faltando el hecho de la posesión en nombre propio.

Se indica que el que posee de consumo o en común o proindiviso, lo hace en nombre de todos los interesados y no en nombre propio, y, por lo tanto, no puede adquirir por prescripción. En el caso de autos existen los datos demostrativos de que los hijos legítimos poseyeron en nombre propio. Es cierto que ellos poseyeron de consumo o proindiviso entre sí, pero, con relación al demandante, éste quedó excluído de la posesión. Los hijos legítimos no poseyeron en nombre del demandante, y ellos actuaron en nombre propio con relación al demandante excluído.

En la sentencia del 24 de noviembre de 1906 (105 J. C. 804), se resuelve que la cuestión de prescripción, del dominio o de la acción de partición, depende de si el poseedor material lo hace en nombre propio o de consumo y proindiviso. La prueba demostró una posesión en concepto de dueño. En la sentencia del 6 de junio de 1917, (140 J. C. 534) un coheredero poseyó individualmente, en nombre propio y en concepto de dueño. Los otros coherederos no protestaron. Se indica que el hecho de que él fué tenido como dueño único lo comprueba el pago de las contribuciones a nombre del poseedor, y que los hijos del anterior poseedor en concepto de dueño, o sea, *varios condueños, con exclusión de los otros herederos*, tíos de esos condueños poseedores, cultivaban y arrendaban los terrenos, disponían de los frutos y pagaba las contribuciones. Se resuelve que la imprescriptibilidad de la acción de partición descansa en una posesión en común, o proindiviso, pero que, como ocurre en el caso de autos, varios condueños poseen en concepto de dueños por más de treinta años, con exclusión de otros condueños, prescribiría entonces la acción de partición.

El· mismo Tribunal Supremo de España, en su sentencia del 7 de julio de 1930, adopta una tesis distinta. Resuelve que la acción de división de herencia ·es más amplia que la reivindicatoria y que la acción no prescribe entre coherederos "cuyo precepto excluye la aplicación de los preceptos referentes a la prescripción adquisitiva de dominio". Se indica que una repartición practicada no era una liquidación definitiva, por lo cual, mientras esto no se hiciera, forzosamente tenía que continuar el estado de proindivisión. Esa opinión o sentencia ha sido criticada y revocada posteriormente por el propio Tribunal Supremo de España, en forma implícita. Independientemente del hecho de que ese Tribunal confunde la existencia de una proindivisión como cuestión de derecho, de la ausencia de una proindivisión total como cuestión de hecho, otras críticas se han formulado contra ese fallo. En la Revista de Derecho Privado (tomo 19, pág. 318, 319), el entonces comentarista José Castán dijo lo siguiente, en cuanto a esa sentencia:

"Sin dejar de reconocer el fondo equitativo y moral de este fallo, supuesta la mala fe que el Tribunal atribuye al demandado y recurrente, nos parece, desde el punto de vista técnico, muy endeble y dudosa su doctrina. Aparte de la tesis, muy discutible e inspirada en un formalismo estrecho, de ser necesaria, para el ejercicio de la acción reivindicatoria, la cita del art. 348 del C. c., palpita en el actual fallo un concepto desmesuradamente amplio de la acción de división de herencia. La Sala engloba en el ámbito de esta acción—que, en realidad, no es otra cosa que la vía jurídica por la que los herederos cuyo título y derechos no son discutidos, piden la cesación de la indivisión—, no sólo la distribución de los bienes que están ya en la masa y han sido poseídos colectivamente y de consuno por los herederos, sino también la incorporación a la masa hereditaria de bienes que no están en ella y han sido poseídos, individualmente, por uno solo de los herederos. Y forzado así el concepto de la acción de partición, tiene la Sala expedito el camino para aplicar al caso el art. 1.965, relativo a la imprescriptibilidad de las acciones divisorias; con lo cual habrá podido conseguir la finalidad práctica de evitar un despojo, pero ha sentado un precedente doctrinal peligroso. La teoría de las accio-

nes imprescriptibles, recogida por ese art. 1.965, ha de ser aplicada en términos muy estrictos. La ley hace imprescriptible el derecho de salir de la indivisión, porque dicho derecho es para los coherederos una pura *facultad* que se renueva cada día y dura tanto como su causa. Las tres acciones enumeradas en el art. 1.965, más que absolutamente imprescriptibles, lo son sólo cuando se cumple el supuesto implícito en dicha disposición, de que se posea la cosa en común y pro indiviso, pues cuando uno de los copropietarios o coherederos posea las cosas en nombre propio y con todos los requisitos necesarios para la prescripción, dichas acciones son prescriptibles. Así lo venía reconociendo el T. S. hasta aquí (sentencias de 31 de mayo de 1899, 15 de abril de 1904, 24 de noviembre de 1906 y 6 de junio de 1917), y es de desear que no llegue a arraigar la desviación que, explícita o implícitamente, inicia el actual fallo con relación a dicha doctrina."

El propio don José Castán actuó como magistrado ponente en una Sentencia del Tribunal Supremo de España del 8 de junio de 1945 (tomo 11, segunda serie, Jurisprudencia Civil, pág. 161, 188), en la cual se dijo lo siguiente:

"Considerando que es doctrina clásica, formulada ya en el Derecho romano y consagrada por las legislaciones modernas y por el art. 1.965 de nuestro Código civil, que las llamadas acciones divisorias, por medio de las cuales, en ciertos casos de comunidad de bienes, cada una de las partes puede exigir la disolución de la comunidad y la división del patrimonio común, están sustraídas a los efectos de la prescripción extintiva; pero esta regla, que obedece no sólo a criterios de política legislativa en relación con estados de la propiedad que se conceptúan poco ventajosos, sino también a la razón sencillísima de que la facultad de pedir la división no es un derecho con propia sustantividad, que pueda extinguirse por su no ejercicio, sino facultad (*res merae facultatis*) que nace y renace en todo momento de la relación de comunidad y ha de considerarse subsistente mientras la propia comunidad dure (*in facultativis, non datur praescriptio*), ha de ser mantenida dentro del concreto ámbito que le es propio, en el sentido de que lo imprescriptible no es el condominio mismo, sino la acción para pedir su casación y que, por tanto, el principio de que se trata presupone necesariamente la *existencia* y la *subsistencia* de la situación de comunidad; lo que lleva aparejada esta doble consecuencia: *a*) Que

no entra en juego—por lo menos directamente—la imprescriptibilidad cuando la *existencia* del derecho de comunidad sobre el que aquélla se asienta, no está reconocida ni demostrada y precisamente se trata de obtener su declaración judicial. *b)* Que esa imprescriptibilidad, que actúa dentro del círculo de los coherederos o condueños que han poseído los bienes de consuno, no es, en cambio, aplicable cuando uno de ellos o un extraño los ha poseído de modo exclusivo, quieta, pacíficamente y en concepto de dueño, por tiempo suficiente para adquirirlos por prescripción (sentencias de esta Sala de 14 de abril de 1904, 24 de noviembre de 1906, 6 de junio de 1917 y 8 de junio de 1943), ya que en ese caso la usucapión de la cosa común, ganada por el condueño o por el extraño, excluye la *subsistencia* del condominio y cierra el paso, por consiguiente, a la acción para pedir la división de la cosa."

Anteriormente, ya el propio Tribunal de España había repudiado implícitamente la doctrina expuesta en la Sentencia del 7 de julio de 1930. En la Sentencia del 8 de junio de 1943 (tomo 3, segunda serie, Jurisprudencia Civil, pág. 317), se resuelve lo siguiente:

"1) No infringe el art. 1.965 del Código Civil la sentencia desestimatoria de una acción sobre agravio en operaciones particionales que, lejos de afirmar que los bienes reclamados fueron poseídos proindiviso, declara que el demandado los tuvo y poseyó quieta y pacíficamente en concepto de dueño y por el término legal establecido para adquirirlos por usucapión; siendo sabido que lo mismo el art. 1.965 que la doctrina del Tribunal Supremo contenida en las sentencias de 31 de mayo de 1899, 15 de abril de 1904, 24 de noviembre de 1906 y junio de 1917, si reconocen, como es tradicional en nuestra doctrina, la imprescriptibilidad de la acción *familiae erciscundae*, subrayan que es supuesto obligado de la misma la posesión de consuno o proindiviso de los bienes hereditarios."

Examinemos la jurisprudencia de las Islas Filipinas sobre el particular. Interpretando el art. 1.965 del Código Civil de las Islas Filipinas, idéntico al 1,865 nuestro (relativo a la imprescriptibilidad de la acción de partición o división entre coherederos o condueños), en el caso de *De Castro* contra *Echarri*, 20 Jur. Fil. 23, se resuelve que la imprescriptibilidad

no puede invocarse cuando uno de los coherederos posee en concepto de dueño, porque la acción de partición descansa necesariamente en la posesión de consuno o proindiviso.

En el caso de *De los Santos* contra *Santa Teresa*, 44 Jur. Fil. 856, 862, se dice lo siguiente:

"Es, por lo tanto, requisito esencialísimo para que no pueda prescribir la acción que compete a los coherederos o a los condueños para pedir la partición de una herencia o la división de la cosa común, que los bienes hereditarios o aquellos que se alegue ser de la comunidad estén poseídos en común o de consuno o colectivamente, y, aunque uno de ellos fuera el tenedor o poseedor material o de hecho de los bienes, que tal posesión la tenga en interés y en nombre de todos los herederos o condueños.

"No habiendo habido posesión de consuno o en común y pro indiviso entre las demandantes y el demandado, desde que falleció su causante común Gregorio Santa Teresa hace más de treinta años, en los bienes cuya división, como herencia relicta por aquél, se ha pedido en la demanda y constando por el contrario, según lo convenido por ambas partes, que el demandado ha estado y viene estando en posesión quieta y pacífica de dichos bienes, no en nombre ni en interés de los que alegan ser sus coherederos y copartícipes en los mismos bienes, sino individualmente, en nombre propio y como único dueño de ellos desde el fallecimiento de dicho Gregorio Santa Teresa hace más de treinta años, sin haber sido interrumpido en ningún tiempo por persona alguna que hubiese alegado tener participación en los mismos bienes y sin intervención alguna de las demandantes, el Juzgado inferior no incurrió en error al estimar que había prescrito la acción ejercitada por las mismas en la demanda, no obstante la disposición contenida en el art. 1965 del Código Civil."

En el caso de *Ramos* contra *Ramos*, 45 Jur. Fil. 379, 388, se dice así:

"Es indudablemente un principio general de jurisprudencia reconocido en el art. 1965 del Código Civil, que la prescripción con arreglo al derecho civil no puede ordinariamente tener lugar mediante la mera posesión por un coheredero o condueño en contra de su coheredero o condueño; y el mismo concepto ha sido plenamente reconocido por el derecho consuetudinario. La razón de esto es que la posesión por un coheredero o condueño

de ordinario redunda en beneficio de los otros. Su posesión no es, por tanto, adversa. Pero cuando el ocupante deja de poseer en concepto de coheredero o condueño, y posee o pretende poseer en virtud de cualquier otro derecho o título, la prescripción tiene lugar en el mismo grado o medida que en los demás casos."

Se trata entonces de una posesión contra todo el mundo.

En el caso de *Solla* contra *Ascueta*, 49 Jur. Fil. 348, se resuelve que el disfrute exclusivo de los productos de una finca por un coheredero constituye una posesión en concepto de dueño que puede servir de base para la prescripción adquisitiva. En el caso de *Casañas* contra *Roselló*, 50 Jur. Fil. 101, se resuelve que, generalmente, no puede invocarse la prescripción entre coherederos pero que, sin embargo, existe una excepción a esta regla cuando un heredero, abierta y adversamente, ocupa bienes en contra de sus coherederos, por un largo período de tiempo.

El demandante-apelante, como hemos visto, alega que aún suponiendo que un coheredero puede adquirir el dominio por su posesión individual en concepto de dueño por más de treinta años, con respecto a una finca específica, aquí se trata, a lo sumo, de una posesión proindiviso por los hijos legítimos con respecto a la totalidad de los bienes, y que debe aplicarse la regla general al efecto de que es imprescriptible la acción de partición cuando esté envuelta una posesión proindiviso. Pero, en este caso, aun si los hijos legítimos, entre sí, poseyeron en forma proindivisa, sin embargo, el demandante, siendo coheredero y condueño, no participó en esa posesión proindivisa. Los hijos legítimos poseyeron en concepto de dueños con exclusión del demandante, el otro coheredero. Aquellos de los coherederos que posean en concepto de dueños por más de treinta años, con exclusión del resto de los coherederos, pueden adquirir por prescripción adquisitiva extraordinaria, en perjuicio de esos otros coherederos que no han participado en la posesión. Repetimos lo que dice Manresa en el tomo 7, pág. 618 (6ta. ed. rev.), después de exponer la regla al efecto de que la posesión en concepto de dueño

por un coheredero milita en perjuicio de los demás. Dice así: "Lo que se dice con relación a todos los bienes hereditarios y a uno solo de los herederos, es aplicable a alguno de dichos bienes solamente y a varios herederos. Si dos o más, juzgándose herederos únicos, gozan el caudal, dividiéndolo o no entre ellos, los demás sólo podrán entablar contra los poseedores la acción de división en el caso que aquellos no hayan consolidado sus derechos en virtud de la prescripción."

Comprendemos que el resultado de este caso podría ser individualmente severo con respecto al demandante, quien es, indudablemente, un coheredero. Pero no podemos ignorar que los demandados han poseído los bienes en concepto de dueño por más de treinta años. La prescripción adquisitiva extraordinaria siempre puede ocasionar adversidad para alguien, aun para aquel que previamente tenía ciertos derechos. Pero tal prescripción está basada en conceptos de orden social, que tienden a estabilizar las relaciones jurídicas. El propio demandante fué responsable de no haber interrumpido la posesión en concepto de dueño de los demandados, y de no haber tratado de defender y hacer valer sus derechos por más de treinta años, sin haber acudido oportunamente a los tribunales para solicitar la partición de los bienes y la nulidad de la escritura del año 1916. Él radicó su demanda después de haber transcurrido más de treinta años después que los demandados empezaron a poseer los bienes en concepto de dueños. El demandante debe asumir las consecuencias de su inacción.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Pérez Pimentel no intervino.