José Francisco Arrieta Barbosa, demandante y recurrente, *v.* Josefa Chinea Viuda de Arrieta y otros, demandados y recurridos.

*Número:* CE-94-553 *Resuelto:* 1ro de diciembre de 1995

526

528

*Elizabeth Álvarez de Barbosa*, abogada de la parte recurrente, *S.L. Largarde Garcés* y *José A. Bravo Abreu*, abogados de la parte recurrida.

El Juez Asociado Señor Fuster Berlingeri emitió la opinión del Tribunal.

Tenemos ante nos la oportunidad de pautar, por primera vez, varios asuntos relativos a la acción de petición de herencia.

I

El recurrente José F. Arrieta Barbosa, hijo natural de José N. Arrieta Ríos y de Francisca Barbosa, fue reconocido judicialmente como tal el 17 de noviembre de 1944. Entonces tenía 17 años de edad. El reconocimiento fue el resultado de una acción filiatoria presentada por el menor contra su padre ante el Tribunal de Distrito, Sala de Bayamón, adjudicada *en rebeldía* por dicho foro. Al momento del nacimiento de Arrieta Barbosa, ambos padres eran solteros, pero a la fecha del reconocimiento judicial de su filiación, su padre Arrieta Ríos estaba casado con Josefa Chinea y había tenido con ella dos hijos, José Edgardo y Rudy Tomás, nacidos el 30 de marzo de 1931 y el 31 de octubre de 1932, respectivamente.

Arrieta Ríos falleció el 2 de enero de 1952, cuando el recurrente tenía 25 años de edad. Poco tiempo después, al enterarse de la muerte de su padre, Arrieta Barbosa se comunicó con un abogado para iniciar gestiones relativas a la reclamación de su herencia. Para esa época, se enteró de que no aparecía inscrito en el Registro Demográfico como hijo de Arrieta Ríos. También surge de los autos del caso que el recurrente declaró que, tanto él como su abogado, intentaron localizar entonces las propiedades dejadas por su padre, sin tener éxito en dicha búsqueda, *a pesar de que una finca de 40 cuerdas aparecía inscrita en el Registro de la Propiedad de Bayamón a favor de Arrieta Ríos y Josefa Chinea desde el 12 de noviembre de 1936.* El recurrente no

realizó entonces ninguna otra gestión en relación con su herencia.

Por otro lado, el 7 de marzo de 1952, el Tribunal de Distrito, Sala de Bayamón, en un procedimiento de declaratoria de herederos instado por Josefa Chinea, declaró a José Edgardo y Rudy Tomás Arrieta como únicos y universales herederos del causante, y le reconoció a Chinea, como su viuda, la cuota usufructuaria que le correspondía. Posteriormente, Josefa Chinea tramitó la planilla de herencia requerida por ley y obtuvo una carta de exención contributiva del Departamento de Hacienda. Conforme con estos documentos, el único activo del caudal hereditario era la mitad indivisa de la finca de Bayamón antes mencionada. Dicha finca fue valorada y tasada por el Departamento de Hacienda en $19,350, pero estaba afectada por deudas ascendentes a $22,028.16.

La mitad indivisa de la finca aludida fue eventualmente inscrita a favor de José Edgardo y Rudy Tomás Arrieta, a título de herencia intestada, gravada dicha porción indivisa con la cuota usufructuaria perteneciente a la viuda Josefa Chinea. Dicha inscripción se realizó conforme con los documentos pertinentes que fueron presentados ante el Registro de la Propiedad el 20 de marzo de 1954. Posteriormente, en varias ocasiones, durante los años 1960, 1961, 1963 y 1965, la señora Chinea y sus hijos José Edgardo y Rudy Tomás realizaron varias transacciones en relación con la finca en cuestión, como sus dueños, incluyendo segregaciones, ventas, permutas y el desarrollo de un proyecto de viviendas. Una de estas transacciones consistió en una permuta de una parte de la finca, a cambio de un edificio localizado en Santurce, que entre 1964 y 1986 produjo una renta bruta de $1,034,419. Mientras Josefa Chinea y sus dos hijos realizaban la mayor parte de las transacciones aludidas, la sentencia de filiación en favor del recurrente aún no había sido inscrita en el Registro Demográfico. Ello se hizo el 17 de septiembre de 1964.

Así las cosas, el 30 de marzo de 1984, transcurridos ya 32 años desde la muerte de Arrieta Ríos, el recurrente presentó una acción ante el Tribunal Superior, Sala de Bayamón. Reclamaba su herencia por primera vez. En síntesis, Arrieta Barbosa alegó que había sido deliberadamente excluido del caudal relicto de su padre por los demandados Josefa Chinea, José Edgardo y Rudy Tomás Arrieta; que eran nulas todas las actuaciones de éstos, descritas antes, relativas a la herencia en cuestión, y que había sufrido graves daños como resultado de las actuaciones de los demandados. Reclamó su participación en el caudal hereditario y en los frutos de éste, más una indemnización por los daños y perjuicios sufridos.

En su contestación a la acción judicial referida, los demandados negaron que hubiesen actuado de mala fe o deliberadamente para excluir a Arrieta Barbosa de la herencia en cuestión. Alegaron que, hasta el inicio de este pleito, no tenían conocimiento alguno de la existencia del demandante y que, por lo tanto, desconocían la relación paternofilial del demandante con Arrieta Ríos. Como defensa afirmativa, plantearon, además, que al momento de la muerte del causante, las deudas del finado sobrepasaban su activo, por lo que no había caudal relicto que distribuir, habiéndose saldado dichas deudas posteriormente con dinero privativo de Josefa Chinea. También alegaron los demandados que la acción del demandante estaba prescrita y que ésta se había presentado —después del descuido, la negligencia o la omisión del demandante de no peticionar su herencia por más de 30 años— con el único propósito de enriquecerse injustamente de los esfuerzos, las inversiones, los trabajos y los logros realizados por los demandados para incrementar el valor del inmueble, que constituía el único patrimonio del causante.

Luego de un extenso y complicado proceso judicial, el 29 de junio de 1994 el Tribunal Superior, Sala de Bayamón, dictó sentencia a favor de los demandados. En lo esencial,

el foro a quo determinó que los demandados habían advenido en conocimiento de la existencia del demandante y de su relación paterno-filial con el causante al ser emplazados en este caso; que Arrieta Barbosa no había realizado gestión alguna para la reclamación de su herencia hasta la presentación de su demanda el 30 de marzo de 1984, y que, a esa fecha, la acción de petición de herencia del demandante estaba prescrita. El tribunal de instancia, pues, desestimó la demanda sin la imposición de costas, gastos u honorarios de abogado. Posteriormente, el 2 de agosto de 1994, el foro a quo emitió una sentencia titulada *Nunc Pro Tunc*. Reconocía que en la anterior erróneamente no había impuesto costas, gastos ni honorarios de abogados, y disponía que la parte perdidosa los pagaría.

El 4 de agosto de 1994, Arrieta Barbosa acudió ante nos. Solicitó la revisión de la sentencia de instancia. El 21 de octubre de ese año decidimos revisar y expedimos el auto solicitado. Las partes sometieron sus alegatos finalmente el 21 y 30 de junio de 1995. Pasamos a resolver.

## II

En síntesis, el recurrente alega que el foro de instancia erró al desestimar la demanda por prescripción. Aduce, que los demandados continúan, aún al presente, disfrutando de los bienes hereditarios en común proindiviso, ya que no ha habido división del caudal relicto. Alega, por ende, que conforme con lo dispuesto en el Art. 1865 del Código Civil, 31 L.P.R.A. sec. 5295, la acción para pedir la *partición* de la herencia no ha prescrito ni puede prescribir. También alega que el Código Civil de Puerto Rico no fija un término para la acción de *petición* de herencia y que la tendencia más progresista en la doctrina española apunta hacia su imprescriptibilidad. Examinemos los méritos de estos planteamientos.

A. En Puerto Rico, conforme con la tradición ro-

mánica que aquí prevalece —*Rivera Rivera v. Monge Rivera*, 117 D.P.R. 464 (1986)— con la muerte del causante se produce la apertura de su sucesión, y con ella nace, para determinados parientes del difunto, el derecho *a adquirir* la propiedad y la posesión de los bienes que constituyen el caudal hereditario. El patrimonio relicto *queda a disposición de los referidos parientes*, quienes sólo pueden adquirir la titularidad sobre éste si aceptan la herencia de su causante. Personas como el recurrente en este caso, fallecido el causante, tienen *vocación sucesoria*, pero no han consolidado aún plenamente el carácter de heredero.[1]

■ E. González Tejera, en su obra *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, Vol. I, págs. 143–144, explica lo anterior en los términos siguientes:

> ... la condición de heredero no se .produce en forma automática con la muerte del causante. Lo que se produce con el deceso es el llamamiento del heredero potencial para que decida cuál opción seleccionará dentro de las varias que el ordenamiento le abre a su disposición.

■ Por otra parte, J.R. Vélez Torres, en su obra *Curso de Derecho Civil: derecho de sucesiones*, 2da ed. rev., San Juan, Ed. Rev. Jur. U.I.A., 1992, T. IV, Vol. III, pág. 443, lo explica de la forma siguiente:

> En nuestro sistema de Derecho sucesoral no existe el llamado heredero necesario. El Código nuestro dispone, sobre este particular, que ... la titularidad de [las] relaciones jurídicas patrimoniales no entran efectivamente al patrimonio del nuevo titular sino desde que éste acepta la herencia. Es decir, rige en nuestro sistema de Derecho sucesoral la regla procedente de los romanos, al efecto de que la herencia no se adquiere, contrario a la regla germánica, sino desde que el llamado acepta la herencia, ya sea en forma expresa o implícita.

■ La distinción entre la vocación sucesoria y el pleno carácter de heredero, explicada antes, ayuda a en-

---

[1] Véase el esc. 5 de esta opinión.

tender las diferencias fundamentales que existen entre las dos acciones judiciales relativas a la herencia, invocadas por el recurrente. En el derecho sucesorio puertorriqueño existe tanto la acción de *petición* de herencia (*hereditatis petitio*) como la acción de *partición* de herencia (*familia erciscundae*). Se trata de dos procedimientos judiciales distintos que persiguen finalidades diferentes. G. Velázquez, *Teoría del Derecho Sucesorio Puertorriqueño*, 2da ed., Hato Rey, Ed. Equity, 1968, pág. 80; Vélez Torres, *op. cit.*, págs. 500–502 y 540–542; González Tejera, *op. cit.*, págs. 217–228 y 293–303. Véase, además, *Alonso v. Muñoz*, 76 D.P.R. 549 (1954). Nuestro derecho, pues, sigue a cabalidad la tradición civilista, en la cual las dos acciones aludidas están claramente diferenciadas. Véase J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1975, T. V, Vol. I, págs. 344–354, y 3ra ed. rev., 1983, Vol. III, págs. 396–415.

La acción de *partición* de herencia está expresamente contemplada o reconocida en los Arts. 1005, 1006, 1012 y 1865 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 2871, 2872, 2878 y 5295. Es el procedimiento judicial que se insta para ponerle fin al estado de indivisión de una herencia. Esta acción se ejerce con el único propósito de obtener la terminación de la comunidad hereditaria, y provoca así la transformación de las cuotas abstractas de los coherederos sobre el caudal relicto en titularidades concretas sobre bienes determinados. Puig Brutau, *op. cit.*, Vol. III, pág. 397; R.M. Roca Sastre, *Estudios de Derecho Privado*, Madrid, Ed. Rev. Der. Privado, 1948, Vol. II, pág. 371; D. Espín Cánovas, *Manual de Derecho Civil*, 3ra ed., Madrid, Ed. Rev. Der. Privado, 1970, Vol. V, pág. 134. Es, pues, la acción mediante la cual los herederos reconocidos del patrimonio relicto convierten su cotitularidad común sobre todo ese patrimonio en títulos únicos propios sobre bienes singulares. Esa, y ninguna otra, es la naturaleza esencial de la partición. *No se trata, pues, de una acción*

*para reclamar, dilucidar o establecer el carácter de here-*
*dero de alguna persona.* Guaroa Velázquez, *op. cit.* Por el
contrario, para que una persona pueda incoar dicha acción,
debe tener ya la condición de heredero.

Es menester insistir en que la acción de *parti-*
*ción de herencia* no es la vía judicial disponible a un des-
cendiente del causante para que reclame su carácter de
heredero frente a los que están en posesión de la herencia.
La acción de partición sólo es ejercitable por aquellos cuya
condición de heredero ya esté establecida y sean partícipes
en una comunidad hereditaria. Manresa señala que,

> [l]a acción de división de herencia no es un derecho concedido a
> las personas llamadas a suceder por el testador o por la ley, sino
> a los que realmente lleguen a ostentar el título y la cualidad de
> herederos ....

También explica Manresa que para poder ejerci-
tar tal acción son "condiciones precisas" las siguientes:

> 1ro. Haber aceptado la herencia, teniendo un derecho actual
> y definitivo sobre la misma.
> 2do. Que el heredero tenga la libre administración y disposi-
> ción de sus bienes. J. Manresa, *Comentarios al Código Civil*
> *Español*, 7ma ed. rev., Madrid, Ed. Reus, 1955, T. VII, pág. 695.

Finalmente, indica Manresa, que cuando un he-
redero no posee los bienes hereditarios de ningún modo, no
procede pedir la división del caudal, sino más bien la ac-
·ción de *petición* de herencia (Manresa, *op. cit.*, pág. 694), y
hace referencia a una sentencia del Tribunal Supremo de
España que resuelve que la imprescriptibilidad de la ac-
ción de partición "está subordinada a que, en tiempo hábil,
se haya ejercitado la *petitio hereditatis*". Manresa, *op. cit.*,
T. XII, pág. 1191.

El eminente comentarista Joaquín Puig Peña ex-
plica las circunstancias particulares que deben concurrir
para que los herederos puedan pedir la partición de la he-
rencia, en los siguientes términos:

... la naturaleza de este acto particional ha determinado que no todos los herederos puedan pedir la práctica de las operaciones particionales. Para ello es necesario:

a) *Que tengan un derecho definitivo a la herencia.*—No basta, pues, que una persona se crea heredero para que pueda pedir la partición: es necesario que efectivamente lo sea; y, además, que lo sea en toda la extensión e intensidad de la palabra, estando ligado por la relación jurídica de comunidad hereditaria. Por ello, si todavía no ha aceptado la herencia, no podrá pedir la partición, sino que deberá adir la herencia, si ha sido admitida por los demás, o ejercitar la acción de petición de herencia, en caso contrario.

. . . . . . .

c) Que el heredero tenga la libre disposición de bienes. J. Puig Peña, *Compendio de Derecho Civil*, 3ra ed. rev., Madrid, Ed. Pirámide, 1976, T. VI, págs. 40–41.

■ En vista de la naturaleza de la acción de partición de herencia, es evidente que el recurrente no tiene razón en su planteamiento, fundamentado en dicha acción. Es cierto que mientras exista una situación de total proindivisión respecto al caudal hereditario, la acción de partición de herencia no prescribe, conforme con lo dispuesto en el Art. 1865 del Código Civil, *supra* ("[n]o prescribe entre coherederos, ... la acción para pedir la partición de la herencia"). *Alonso v. Muñoz*, supra. Pero ello no le da fundamento alguno a la reclamación de Arrieta Barbosa, ya que él propiamente no ha instado, *ni en sus circunstancias puede instar*, una acción de partición de herencia. Sencillamente, tal acción no aplica a su caso. Como el recurrente no había aceptado la herencia de modo alguno, ni era partícipe en la comunidad hereditaria, sino que, por el contrario, como lo que persigue es establecer por primera vez su condición de heredero frente a los que retienen el patrimonio hereditario, en el caso ante nos no procede la acción de partición, sino la de *petición de herencia*, que no está expresamente incluida entre las que no prescriben, conforme a la citada disposición del Código Civil.

■ La acción de *petición* de herencia, que es la que el recurrente realmente ejerció en el caso de autos, no se

encuentra reglamentada de forma específica en el Código Civil, pero su vigencia es indiscutible. Guaroa Velázquez, *op. cit.*; Vélez Torres, *op. cit.*; González Tejera, *op. cit.*; Puig Brutau, *op. cit.*, Vol. I, pág. 348. Está claramente dispuesta en los Arts. 264 y 970 del Código Civil, 31 L.P.R.A. secs. 1044 y 2807;[2] y, como se señala más adelante, ha sido reconocida en nuestra jurisprudencia en varias ocasiones.

Conforme con la doctrina civilista, la *actio petitio hereditatis* es la acción mediante la cual una persona reclama el reconocimiento de su condición de heredero y la consiguiente restitución de lo que le corresponde del caudal hereditario. Responde a la necesidad de proteger el derecho hereditario, y se ejerce contra quien posea la herencia en todo o en parte. Puig Brutau, *op. cit.*; González Tejera, *op. cit.* Roca Sastre la define como la acción "que compete al heredero real contra quienes posean todo o parte de los bienes hereditarios a título de herederos del mismo causante, o sin tener título alguno, a fin de obtener dicho heredero la restitución de tales bienes, a base de la comprobación o reconocimiento de que a él corresponde la cualidad de heredero".[3]

La cuestión medular que debemos resolver, en cuanto a esta acción de petición de herencia, es si dicha acción prescribe. Veamos.

B. No cabe duda alguna que nuestro Código Civil, igual que el de España, contempla que la acción de petición de herencia, a diferencia de la acción de partición, prescribe. Dice el Art. 970 del Código Civil, *supra*:

Fuera de los casos a que se refieren las dos anteriores seccio-

---

[2] El Art. 264 del Código Civil, 31 L.P.R.A. sec. 1044, enumera las cosas incorporales consideradas como inmuebles e incluye en su inciso (3) la acción "para reclamar el todo de una herencia". El Art. 970 del Código Civil, 31 L.P.R.A. sec. 2807, dispone que un heredero puede aceptar a beneficio de inventario "mientras no prescriba *la acción para reclamar la herencia*". (Énfasis suplido.)

[3] R.M. Roca Sastre, *Estudios de Derecho Privado*, Madrid, Ed. Rev. Der. Privado, 1948, pág. 376.

nes, si no se hubiese presentado ninguna demanda contra el heredero, podrá éste aceptar a beneficio de inventario o con el derecho de deliberar, *mientras no prescriba la acción para reclamar la herencia.* (Énfasis suplido.)

■ Más aun, en virtud de lo expresamente dispuesto en el Art. 264 de nuestro Código Civil, *supra*, la *actio petitio hereditatis* se considera como inmueble, por razón del objeto al cual se aplica, y el Art. 1863 de dicho Código, 31 L.P.R.A. sec. 5293, dispone que las acciones reales sobre inmuebles prescriben a los treinta (30) años.

■ Además, el Art. 65 del Código Civil, 31 L.P.R.A. sec. 183, relativo a los derechos del ausente, señala que:

Lo dispuesto en la sección anterior se entiende sin perjuicio de las *acciones de petición de herencia* u otros derechos que competan al ausente .... Estos derechos no se extinguirán *sino por el lapso de tiempo fijado para la prescripción.* (Énfasis suplido.)

■ Finalmente, el Art. 1865 del Código Civil antes citado, que enumera específicamente varias acciones que no prescriben, incluyendo la de la partición de herencia, no incluye la acción de petición de herencia.

Un análisis contextual de las diversas disposiciones aludidas de nuestro Código Civil hace inevitable llegar a la conclusión de que la acción de petición de herencia *prescribe.* Así lo hemos intimado antes varias veces. Aunque nunca lo resolvimos de modo expreso, en varias decisiones previas de este Tribunal hemos hecho mención de que la acción de petición de herencia es prescriptible. Véanse: *Alonso v. Muñoz*, supra, págs. 558–559; *Penne González, y de la Guerra, Opositor*, 46 D.P.R. 264, 273 (1934); *Sucesión Alfonso v. Rosso*, 20 D.P.R. 478 (1914); *Escalona v. Sucesión Castro*, 17 D.P.R. 774, 784 (1911).

Por otro lado, los comentaristas del derecho sucesorio puertorriqueño, al igual que la mayor parte de las figuras más sobresalientes de nuestra tradición civilista, están

contestes en que la acción en cuestión prescribe a los treinta (30) años. Véanse: Guaroa Velázquez, *op. cit.*; Vélez Torres, *op. cit.*, págs. 541–542; González Tejera, *op. cit.*, págs. 220–222; Puig Brutau, *op. cit.*, Vol. I, págs. 351–354. Éste último, en el texto citado, no sólo señala que en la doctrina predomina el criterio de estimar que la *hereditatis petitio* se extingue por prescripción, sino que cita, además, como conformes con ese criterio a Roca Sastre, Castán, Gullán y Simó. Véanse, además: Espín Cánovas, *op. cit.*, pág. 218; "7 Manresa 616 (sexta ed. rev.)", citado en *Alonso v. Muñoz*, supra, pág. 558. Esta postura es, asimismo, la que el Tribunal Supremo de España ha asumido reiteradamente. Véanse: Puig Brutau, *op. cit.*; Vélez Torres, *op. cit.*; González Tejera, *op. cit.*

 Al ponderar la cuestión ante nos, debemos tener muy en cuenta que en nuestra jurisdicción, como en tantas otras, existe un gran interés público en dotar de certeza las relaciones jurídicas y en que los pleitos se atiendan con la debida celeridad. Por ello, hemos afirmado antes que la prescripción existe por motivos de necesidad y utilidad social. Por medio de esta tan arraigada figura jurídica, se asegura la estabilidad de la propiedad y la certidumbre de los demás derechos. Como ha señalado L. Díez-Picazo, en su obra *La prescripción en el Código Civil*, (1964), con la prescripción se protege sobre todo el interés de la persona de no verse expuesta a reclamaciones muy antiguas, de las cuales se haya perdido memoria. Se evita así la ominosa sorpresa que produce la resucitación de reclamaciones viejas, cuando se ha perdido la prueba y no se pueden encontrar ya testigos de hechos necesarios para dirimir las controversias. Como bien ha señalado Castán, la economía y la vida jurídica sufrirían un grave quebranto si el estado de hecho, representado por el ejercicio o no ejercicio de un derecho, no viene a convertirse, por el transcurso del

tiempo, en un estado de derecho inatacable.[4] Conforme con estos conceptos, hemos afirmado reiteradamente cuán importante es que las reclamaciones jurídicas tengan un término prescriptivo, para evitar que el poder público proteja indefinidamente los derechos no exigidos por su titular, lo que permite la presunción *jure de jure* de que esos derechos han sido abandonados. *García Aponte et al. v. E.L.A. et al.*, 135 D.P.R. 137 (1994); *Rivera Castillo v. Mun. de San Juan*, 130 D.P.R. 683 (1992); *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740 (1992); *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943 (1991); *Olmo v. Young & Rubican of P.R., Inc.*, 110 D.P.R. 740 (1981); *Agulló v. ASERCO*, 104 D.P.R. 244 (1975); *Ríos v. Banco Popular*, 81 D.P.R. 378 (1959).

Resolvemos, pues, que la acción de petición de herencia prescribe a los treinta (30) años. Conforme al criterio prevaleciente entre la crítica erudita, ese término prescriptivo comienza a transcurrir desde que el heredero aparente entró en la posesión de los bienes de la herencia.[5] Véanse: Puig Brutau, *op. cit.*, pág. 352; Gon-

---

[4] J. Castán Tobeñas, *Derecho civil español, común y foral*, 11ma ed., Madrid, Ed. Reus, 1971, T. I, Vol. 2, pág. 834.

[5] En la doctrina erudita, se ha discutido la cuestión de si la investidura de la posesión de los bienes hereditarios ocurre automáticamente desde el momento del fallecimiento del causante o si, por el contrario, ello sólo puede ocurrir una vez la herencia haya sido aceptada. En Puerto Rico, Guaroa Velázquez expresó su criterio de que la posesión se transmite desde el momento del fallecimiento del *de cuius*. G. Velázquez, *Teoría del Derecho Sucesorio Puertorriqueño*, 2da ed., Hato Rey, Ed. Equity, 1968, págs. 51–52. Sin embargo, el Prof. Alberto Blanco rebatió tal tesis. Expresó su opinión de que, en Puerto Rico, debe prevalecer la doctrina dominante entre los comentaristas españoles, también sostenida por el Tribunal Supremo de España, de que la adquisición de la herencia no ocurre ipso jure, sino que requiere la aceptación del heredero. A. Blanco, *La adquisición de la herencia en el Derecho Civil de Puerto Rico*, 34 Rev. Jur. U.P.R. 5 (1965). Por otra parte, el profesor González Tejera coincidió con esta última postura. Resaltó que, conforme con lo dispuesto en el Art. 369 del Código Civil, 31 L.P.R.A. sec. 1443, la posesión de los bienes se transmite desde el fallecimiento del causante, *pero sólo en el caso de 'que llegue a adirse la herencia*; esto es, que ha de aceptarse ésta. E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ed. Ramallo, 1983, págs. 143–144. Tal es también la opinión de J.R. Vélez Torres, *Curso de Derecho Civil*, 2da ed. rev., San Juan, Ed. Rev. Jur. U.I.A., 1992, págs. 443–444, y la que este Foro adoptó, en general, en *Rivera Rivera v. Monge Rivera*, 117 D.P.R. 464 (1986).

zález Tejera, *op. cit.*, pág. 222; R. Roca Sastre, *Anotaciones al Derecho de Sucesiones*, Barcelona, 1951, T. I pág. 397.

C. Al examinar los hechos de este caso, a la luz de la normativa reseñada antes, es evidente que cuando el recurrente instó su acción de petición de herencia, ésta había prescrito. Ya habían transcurrido 32 años desde el fallecimiento del causante y poco más de 30 años desde que los herederos demandados habían presentado en el Registro de la Propiedad los documentos acreditativos de sus respectivos títulos sobre el caudal hereditario, que de hecho ya poseían. El recurrente sencillamente no actuó a tiempo para hacer valer los derechos que tuviese como hijo del causante. El tribunal sentenciador determinó, con arreglo a la prueba presentada en el caso, que "no hubo impedimento físico ni mental que obstaculizara al demandante reclamar lo que en derecho le correspondía, o que de otro modo justificara el abandono voluntario de sus derechos, toda vez que éste conocía la existencia de los otros herederos, a diferencia del desconocimiento de éstos últimos de la existencia del demandante". Por ello, correctamente desestimó la demanda. El recurrente no ha presentado razón válida alguna que justifique intervenir con esta parte de la decisión a quo, por lo que procede que ésta se confirme.

## III

En cuanto al asunto de las costas, los gastos y los honorarios, que el recurrente también ha impugnado ante nos, debe observarse que el tribunal de instancia no hizo ni intimó de modo alguno que hubiese mediado temeridad de

---

En el caso ante nos, los demandados presentaron ante el Registro de la Propiedad los documentos pertinentes para inscribir a su nombre el único bien hereditario, el 20 de marzo de 1954, lo que constituyó una aceptación tácita de la herencia. Véanse: *González Campos v. González Mezerene*, 139 D.P.R. 228 (1995); *Burgos Orellano v. Tribunal Superior*, 101 D.P.R. 647 (1973). Por ello, su posesión común del caudal relicto se retrotrae a la fecha de fallecimiento del causante.

parte del demandante, por lo que no procede la imposición de honorarios de abogado.

En cuanto a la imposición de costas, en nuestra jurisdicción la norma que las impone a la parte vencida es mandatoria. *J.T.P. Dev. Corp. v. Majestic Realty Corp.*, 130 D.P.R. 456 (1992). Ahora bien, la compensación de peritos por vía de costas no es automática. Deben concederse si el testimonio pericial presentado por la parte que los reclama era necesario para que dicha parte prevaleciera. *Meléndez v. Levitt & Sons of P.R.*, 104 D.P.R. 797 (1976); *Pereira v. I.B.E.C.*, 95 D.P.R. 28 (1967). En el caso ante nos, la cuestión medular en torno de la cual giró el pleito fue la de si la acción del demandante estaba prescrita. Para llegar al dictamen determinativo que dispuso del caso, el foro sentenciador no necesitaba prueba pericial. Por lo tanto, no procede la imposición de costas por tal concepto, como hizo el foro a quo en su segunda sentencia titulada *nunc pro tunc*.

## IV

Por los fundamentos expuestos, *se dictará sentencia para confirmar la del Tribunal Superior, Sala de Bayamón, de 29 de junio de 1994, y para revocar la de 2 de agosto de 1994 en cuanto impone al recurrente costas por los gastos de peritos y honorarios de abogado.*

El Juez Asociado Señor Rebollo López disintió sin opinión escrita.