# 2004 DTA 122

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGION JUDICIAL DE HUMACAO, PANEL IX

EL PUEBLO DE PUERTO RICO
Apelado

v.

LUIS SANTIAGO LUHRING
Apelante

Núm. KLAN-03-00503

San Juan, Puerto Rico, a 9 de julio de 2004

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Aponte Jiménez y Salas Soler

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos el apelante Luis Santiago Luhring en el interés de obtener la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao (en adelante, "*TPI*") de 7 de abril de 2003. Mediante dicho dictamen se le declaró culpable de infringir el Artículo 7.02 de la Ley Núm. 22 de 7 de enero de 2000, según enmendada, conocida como la "*Ley de Vehículos de Tránsito de Puerto Rico*" (en adelante, "*Ley Núm. 22*").

Por los fundamentos que más adelante habremos de exponer, confirmamos la sentencia apelada.

### I

En el presente caso contamos con el beneficio de una exposición narrativa de la prueba (en adelante, "*ENP*") debidamente aprobada por el Tribunal *a quo*. Según la ENP, se encuentran dos testimonios: el primer testimonio de uno de los agentes de la policía que intervino con el apelante, agente Néstor Carrasco Garay, y el testimonio del perito químico a cargo de la calibración y funcionamiento de la máquina computadorizada utilizada para realizar las pruebas de aliento en el cuartel de la policía.

Como parte de la evidencia presentada por el fiscal, pero no admitida por el TPI, se encontraban resultados y documentos relacionados a una prueba de aliento alegadamente realizada sobre el apelante mediante el uso de una máquina computadorizada para realizar las pruebas de aliento.

De la ENP se desprende que, el 12 de diciembre de 2002, el apelante fue intervenido en o alrededor de las 11:30 de la noche por agentes del orden público mientras conducía aquél en su vehículo de motor por la carretera Núm. 908, Km. 0.9 del Municipio de Humacao.

El agente Carrasco declaró que el apelante fue detenido e intervenido porque los agentes observaron que, mientras el apelante, el señor Santiago Luhring, manejaba su vehículo de motor, cambiaba de carril indebidamente, es decir, iba zigzagueando entre los carriles sin hacer uso debido de las señales de tránsito para llevar a cabo dicha maniobra. Al momento de su detención, una vez los agentes se acercan al vehículo para solicitar los documentos de rigor, advierten un olor a alcohol expelido por el apelante y le notaron los ojos rojizos.

Luego de cumplir con el requisito de hacerle las advertencias de ley, el apelante accedió voluntariamente al requerimiento de los oficiales del orden público para que se sometiese, en el mismo lugar donde se llevó a cabo la detención, a una prueba preliminar de detección de alcohol en el aliento del apelante con el instrumento conocido como el Alco-Sensor. El apelante arrojó un resultado en exceso de .10% de alcohol en la sangre, por

lo que los agentes decidieron esperar veinte minutos para hacerle la segunda prueba oficial con el instrumento conocido como el Intoxilyzer.

Durante el juicio en su fondo celebrado el 26 de febrero de 2003, el apelante objetó la admisión de evidencia en los resultados de la prueba a dicha parte entregados, bajo el fundamento de que el documento no fue firmado por el agente que le practicó la prueba de alcohol. A su vez, el apelante objetó la admisión en evidencia de la tarjeta de análisis que acompaña la referida prueba, ya que de la misma no se desprendía el número de la máquina y la fecha de llevado a cabo el análisis, ya que esos datos eran ilegibles según aparecían en la copia entregada. Además, acotó el apelante que la hoja de cotejo del procedimiento seguido en la administración de la prueba no fue firmada por el agente que llevó a cabo la prueba.

Oportunamente, el Ministerio Público argumentó a favor de la admisión en evidencia de los documentos antes mencionados. Sin embargo, debido a que la autenticidad de los mismos podía establecerse mediante prueba testifical, de lo que se trataba era de un asunto sobre el valor probatorio de los documentos y no una cuestión de su admisibilidad, por lo que el foro de instancia resolvió que no eran admisibles en evidencia.

Cónsono al testimonio del agente Carrasco, el resultado de la segunda prueba de aliento que se le hizo al apelante arrojó un resultado en exceso de .14%, el cual pudo observar en la pantalla de la máquina Intoxilyzer. Ante ello, el TPI tomó conocimiento judicial del resultado según se desprende de la denuncia, siendo éste uno de .143%.

El 7 de abril de 2003, una vez aquilató los testimonios del agente Carrasco y del perito químico, el TPI declaró al apelante culpable de manejar el vehículo de motor bajo los efectos de bebidas embriagantes con un contenido de alcohol en la sangre en o mayor al .08%, Artículo 7.02 de la Ley Núm. 22, *supra*.

Insatisfecho con el dictamen en su contra, el apelante acude ante nos el 7 de mayo de 2003 mediante su *Escrito de Apelación* y acota, en síntesis, que el TPI erró al haber dispuesto en el escrito de sentencia que el apelante había hecho alegación de culpabilidad -cuando lo que hizo fue una alegación de no culpable- y que tampoco expuso las razones para la imposición de la sentencia apelada. Además, la parte apelante adujo que el TPI incidió en su decreto de culpabilidad sin antes haber determinado los elementos del delito imputado y en *"[no haber] cumplido los procedimientos establecidos en el reglamento aplicable en violación al debido proceso de ley"*. ■

Finalmente, la parte apelante alega que el TPI erró al tomar en consideración que *"la prueba científica establecida mediante reglamento aprobado por el Departamento de Salud"* ■ con el propósito de establecer la cantidad en exceso de alcohol en la sangre, era innecesaria para determinar que el apelante excedía el mínimo establecido en la Ley Núm. 22.

Examinado el escrito de apelación presentado por la parte apelante, y habida cuenta que los errores señalados en él versan sobre la apreciación de la prueba presentada por el Ministerio Público en el juicio, mediante múltiples requerimientos por vía de resolución para que cumplieran conforme lo ordenado, siendo el primero de ellos el 9 de junio de 2003, le concedimos a dicha parte varios términos para que nos sometiera una reproducción de la prueba oral para la rápida dilucidación del caso. Tras innumerables escollos procesales que apuntan hacia un posible desconocimiento del trámite apelativo, se cumplió con lo ordenado. Habiéndose sometido la ENP debidamente aprobada por el TPI, ordenamos mediante Resolución de 3 de febrero de 2004, la elevación de los autos originales y ofrecimos un término a las partes para presentar su alegato para, finalmente, dar el caso por sometido.

Con el beneficio de la presentación de la ENP y el análisis de los argumentos de las partes a la luz del derecho aplicable, resolvemos.

## II

Como primer señalamiento de error, el apelante establece que el TPI designó con un nombre equivocado la clase de alegación emitida por el apelante, es decir, el TPI mencionó en su sentencia que el apelante había hecho alegación de culpabilidad cuando la misma fue una de no culpable. Entendemos que lo acotado por el apelante constituye, a toda luz, una inadvertencia, la cual se considera, meramente como un error de forma, no un error de derecho que incida sobre la parte dispositiva de la sentencia, es decir, en la pena que le fuere impuesta al apelante. No le asiste la razón.

La Regla 185 de las de Procedimiento Criminal, 34 L.P.R.A., Ap. II, permite que cuando se trata de errores de forma en la sentencia, órdenes u otros documentos que obren en autos atribuibles a omisión o inadvertencia, pueden estar sujetos a corrección por el tribunal en cualquier momento, y luego de notificarse la sentencia a las partes, si así lo estimase necesario la misma. Esto responde a que si la inadvertencia u omisión resaltada no constituye un error fundamental, ello no le ocasiona perjuicio alguno al acusado. *Pueblo v. Candelario Couvertier*, 100 D.P.R. 159 (1971). Véase Regla 49.1 de las de Procedimiento Civil, 32 L.P.R.A., Ap. III (contraparte de la antes citada Regla 185 (b), la cual de idéntica manera a las providencias ofrecidas por dicho precepto, también provee un mecanismo para corregir errores de forma habidos en una sentencia resuelta en el ámbito civil).

Ante ello, y de manera análoga a la controversia que nos ocupa, la jurisprudencia ha resuelto que un foro judicial puede corregir como error de forma, por ejemplo, cálculos matemáticos, **nombres erróneos**, *Miranda v. Soc. Gineco-Obstétrica del Norte*, 130 D.P.R. 128 (1992); la edad de una persona a ser naturalizada, la designación del año en que las contribuciones fueron fijadas, la imposición de las costas, gastos y honorarios de abogado del procedimiento, *Arrieta v. Chinea Vda. de Arrieta*, 139 D.P.R. 525 (1995).

Una mera lectura del ENP nos da a entender que el apelante fue sentenciado con posterioridad a que el TPI aquilatara la prueba testifical presentada en el juicio plenario, sobre la cual basó su determinación final. Por ello, en nada debe afectarse su derecho de apelación por razón de que en la sentencia se mencione la misma y se dictó luego de que el apelante emitiera su alegación de culpabilidad, lo cual no surge del expediente. La inadvertencia resaltada no constituye un error fundamental; ello no le ocasiona perjuicio alguno al acusado. *Pueblo v. Candelario Couvertier, supra*. El primer error no fue cometido.

En cuanto a la alegada responsabilidad que tiene el TPI para exponer las determinaciones de hechos sobre las cuales basó sus conclusiones de derecho, en los casos de abolengo criminal, la parte apelante señala que incidió el foro apelado al no exponer por escrito o verbalmente las razones para la imposición de la sentencia. El apelante basó su contención en lo dispuesto en la Regla 162 de Procedimiento Criminal, 34 L.P.R.A., Ap. II, y que el TPI no basó sus conclusiones de derecho en la prueba científica ofrecida, pero no admitida en evidencia, ya que basó las mismas únicamente en la prueba testifical aquilatada. Tampoco les asiste la razón.

El término *"sentencia"* significa el pronunciamiento hecho por el tribunal en cuanto a la pena que se le impone al acusado. Regla 162 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 162. Al momento de dictar sentencia, el tribunal deberá explicar verbalmente o por escrito las razones para la imposición de la sentencia. *Íd.*; *Pueblo v. Castro Muñiz*, 118 D.P.R. 625, 637 (1987).

Para emitir un fallo en una controversia como en el caso de autos, la jurisprudencia ha resuelto como permisible en el procedimiento penal la evidencia testifical no pericial sobre estado de embriaguez del imputado al momento de cometerse la alegada infracción. *Pueblo v. Díaz*, 97 D.P.R. 59 (1969); *Pueblo v. Cabrera Osorio*, 84 D.P.R. 97 (1961).

Bajo el Artículo 7.02 de la Ley Núm. 22, *supra*, se tipifica el delito de manejar un vehículo de motor bajo los efectos de bebidas embriagantes y se dispone de la evidencia necesaria para probar el mismo.

434

A tales fines prescribe:

*"En cualquier proceso criminal por infracción a las disposiciones de la sec. 5201 de este título, el nivel o concentración de alcohol existente en la sangre del conductor al tiempo en que se cometiera la alegada infracción, según surja tal nivel o concentración del análisis químico o físico de su sangre o aliento o cualquier sustancia de su cuerpo, menos la orina, constituirá base para lo siguiente:*

*(a) Será ilegal per se, que cualquier persona conduzca o haga funcionar un vehículo de motor, cuando su contenido de alcohol en su sangre sea de ocho centésimas del uno por ciento (0.08%), o más, según surja tal nivel o concentración del análisis químico o físico de su sangre o aliento.*

*(b) [...]*

*Las disposiciones de los anteriores incisos (a) y (b) que preceden no deberán interpretarse en el sentido de que las mismas limitan la presentación de cualquier otra **evidencia competente** sobre si el conductor estaba o no bajo los efectos de bebidas embriagantes al tiempo de cometerse la alegada infracción."* (Énfasis nuestro)

9 L.P.R.A. sec. 5202.

Se determinó por el legislador en dicha ley que su vigencia era a partir de un año después de su aprobación, es decir el 7 de enero de 2001. Además, que se tenía que aprobar el reglamento para las pruebas científicas dispuesta en la misma. Art. 7.09 de la Ley Núm. 22, *supra*.

De la lectura del artículo antes mencionado podemos concluir que el legislador específicamente permitió que se probara el delito de manejar un vehículo de motor en estado de embriaguez, bajo prueba científica, ya fuera de análisis químico, físico de sangre o de aliento y el por ciento correspondiente, pero sin que ello limitara la presencia de cualquier otra evidencia competente.

Este principio debe ser analizado a la luz de los pronunciamientos del Tribunal Supremo, -bajo dicha conducta delictiva en la ley anterior- a los fines que la comisión del delito de conducir un vehículo de motor en estado de embriaguez, puede establecerse con otra prueba competente, independiente del resultado de los análisis de aliento, sangre o químicos. *Pueblo v. Zalduondo Fontánez*, 89 D.P.R. 64, 71-72 (1963). Se puede establecer y probar el delito que un conductor estaba bajo los efectos del alcohol al manejar un vehículo de motor, por medio del testimonio de las personas que observaron su comportamiento. *Pueblo v. Díaz Just*, 97 D.P.R. 59, 63 (1969); *Pueblo v. Cruz Rivera*, 88 D.P.R. 332 (1963).

Resuelta la controversia sobre la prueba que puede utilizar un tribunal para basar su dictamen en casos sobre estado de embriaguez y Ley Núm. 22, *supra*, es nuestro deber dirimir sobre la discreción que le ampara al foro apelado al momento de emitir su juicio.

Al momento de imponer la pena y dictar sentencia, el tribunal tiene amplia discreción para disponer lo que proceda en derecho. En nuestro ordenamiento jurídico se ha entendido que la discreción es *"una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"*. *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 D.P.R. 651, 658 (1997); *Pueblo v. Ortega Santiago*. 125 D.P.R. 203, 211 (1990); *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964). Dentro del ámbito judicial, el concepto de discreción *"no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho"*. *Pueblo v. Sánchez González*, *supra*; *Bco. Popular de P.R. v. Mun. de Aguadilla*, *supra*. El actuar de esa manera constituye claramente un abuso de discreción. El concepto *"discreción"*, por su parte, *"necesariamente ha de nutrirse de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa o limitación alguna..."*. *Santa Aponte v. Srio. del Senado*, 105 D.P.R. 750, 770

(1977).

Se ha establecido reiteradamente que no es fácil precisar cuándo un tribunal de justicia incurre en un abuso de discreción. *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 211 (1990). Sin embargo, no existe duda de que el adecuado ejercicio de la discreción judicial está inexorablemente e indefectiblemente atado al concepto de la razonabilidad. *Íd.*

El abuso de discreción se puede manifestar de varias maneras en el ámbito judicial. Se incurre en ello, entre otras y en lo pertinente, cuando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando, por el contrario, el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos. *Íd.*

De ordinario, este Tribunal intermedio no interviene en el ejercicio de la discreción del juez de primera instancia en la imposición de la pena, salvo en casos de claro abuso de discreción. *Pueblo v. Rodríguez Santana*, 146 D.P.R. 860 (1998); *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299 (1991); *Pueblo v. Rivera Torres*, 121 D.P.R. 128, 140 (1988).

Al ejercer su discreción al momento de dictar sentencia, los jueces deben seguir los criterios establecidos en la Regla 171 de Procedimiento Criminal, *supra*, a tenor con los hechos y las circunstancias de cada caso en particular y a la situación individual de cada convicto. *Pueblo v. Rodríguez Santana, supra*; *Pueblo v. Echevarría Rodríguez I, supra*; *Pueblo v. Castro Muñiz, supra*.

A base de la exposición que antecede, la falta de prueba científica no impedía que se dictara sentencia ni mucho menos corresponde a un abuso de discreción por parte del TPI al momento de dictar la sentencia apelada. El estado de embriaguez en que se encontraba el apelante, según atestado por el agente Carrasco, en conjunción con el .14% de alcohol que tenía en su sangre según las pruebas efectuadas, fue establecido mediante el testimonio de dicho agente. Dicho testimonio mereció entera credibilidad del foro apelado. Ello bastó para conectar la conducta exhibida por el apelante (i.e. ojos rojizos, manejar de forma zigzagueante sin hacer los debidos cambios de carril, aliento con olor a alcohol), según observado por los agentes con el delito imputado.

Finalmente, en cuanto al deber de explicar verbalmente o por escrito las razones para la imposición de la sentencia, de la misma se desprende que, el día de su pronunciamiento, el TPI, en efecto, cumplió con su deber de informar al acusado de la naturaleza del cargo y sobre el fallo dictado. Además, del texto de la sentencia que nos ocupa queda claro que el TPI cumplió con preguntarle al apelante si tenía alguna causa legal que aducir para demostrar que no procedía el dictamen y, en ausencia de tal causa legal, procedió a dictar la misma. El error señalado tampoco se cometió.

Cónsono con lo anterior, y en cuanto a lo que atañe a la tercera imputación de error, a saber, el decreto de culpabilidad del apelante sin haber determinado los elementos del delito imputado y el grado de alcohol en la sangre, entendemos lo siguiente.

De entrada, debemos mencionar que para aquilatar el testimonio en cuestión, el juzgador de los hechos debe considerar el motivo habido para realizar la intervención inicial y si el mismo estuvo fundado conforme derecho. El término *"motivos fundados"* contenido en la Regla 11 de las de Procedimiento Criminal, 34 L.P.R.A., Ap. II, significa la posesión de aquella información o conocimiento que lleva a una persona ordinaria y prudente a **creer** que la persona a ser detenida ha cometido un delito o infracción o va a cometerlo. Véase *Pueblo v. Calderón Díaz*, opinión de 5 de abril de 2002, 156 D.P.R.__ (2002), **2002 J.T.S. 48**; *Pueblo v. Colón Bernier*, 148 D.P.R. 135 (1999); *Pueblo v. Ruiz Bosch*, 127 D.P.R. 762 (1991).

Además, al momento de verter dicha información ante el juzgador de los hechos, se ha reiterado consistentemente que la declaración de un sólo testigo, de ser creída por el juzgador de instancia, es prueba suficiente de cualquier hecho. Regla 10 (D) de Evidencia, 32 L.P.R.A., Ap. IV; *Trinidad v. Chade,* opinión de 18 de enero de 2001, 153 D.P.R.__ (2001), **2001 J.T.S. 10**.

La credibilidad consiste en una asignación valorativa de la certeza o probabilidad sobre una versión de los hechos o acontecimientos incidentales al caso. El juzgador de los hechos está llamado a hacer este ejercicio de valorativo sobre la totalidad de la prueba y para el mismo sólo se requiere valerse del sentido común, la lógica y la experiencia. El juzgador de los hechos en instancia es el que, de ordinario, está en mejor lugar para aquilatar la prueba testifical y dirimir credibilidad, ya que fue quien oyó y vio declarar a los testigos. *Pueblo v. Cabán Torres, supra.* Por ello, no se puede en apelación con un sólo récord inexpresivo, sustituir la apreciación de la prueba llevada a cabo por el juez sentenciador. *Pueblo v. Torres Villafañe,* 143 D.P.R. 474 (1997). La determinación de si la prueba presentada demuestra o no la comisión de determinado delito compete, por ser una cuestión de hecho, al juzgador de los mismos. *Pueblo v. Bonilla Ortiz,* 123 D.P.R. 434 (1989). Además, la apreciación de la prueba por el foro sentenciador merece deferencia del foro apelativo, el cual no intervendrá con ella cuando no exista error manifiesto, pasión, prejuicio o parcialidad. *Pueblo v. Maisonave,* 129 D.P.R. 49, 62-63 (1991). Resolvamos a tono con lo anterior. Veamos.

### III

La cadena de eventos que nos atañe tiene gran importancia al momento de evaluar los criterios utilizados por el TPI al momento de aquilatar la credibilidad de los testigos ante sí. Veamos.

Primeramente, en el caso de autos, los agentes del orden público, en ocasión de transitar la carretera 908, Km. 0.09 de Humacao, avistaron la manera errática y peligrosa en que manejaba el apelante su vehículo de motor por la mencionada vía pública. El cambio constante de un carril a otro, una y otra vez, sin hacer las debidas señales de tránsito conllevó un motivo fundado para que los agentes intervinieran inicialmente con el apelante la noche del 12 de diciembre de 2002.

Segundo, la prueba presentada por el Ministerio Público, consistente en el testimonio del agente Carrasco, el cual fue admisible y mereció entera credibilidad del juzgador del TPI, fue suficiente y satisfactoria en derecho para establecer más allá de duda razonable que el apelante conducía un vehículo de motor con un por ciento de alcohol en la sangre mayor de .08%, elemento de por sí constitutivo del delito imputado.

Cabe recordar que todo hecho puede ser probado por evidencia circunstancial, de conformidad con la Regla 10 (H) de Evidencia. Cualquier elemento del delito puede probarse por evidencia directa o mediante evidencia indirecta o circunstancial de conformidad con la regla. E.L. Chiesa, *Tratado de Derecho Probatorio,* Tomo II, **Publicaciones J.T.S.**, 2000. Es claramente admisible en evidencia el hálito de alcohol y el comportamiento de la persona para inferir un estado de embriaguez superior al límite legal bajo el Artículo 7.02 de la Ley Núm. 22, *supra. Pueblo v. Díaz, supra*; *Pueblo v. Cabrera Osorio, supra.* El tercer error no fue cometido.

Los errores cuarto y quinto se dirigen a atacar la suficiencia de la prueba de cargo para sostener la culpabilidad del apelante más allá de duda razonable luego de que el TPI determinó que no eran admisibles en evidencia tanto el informe sobre la prueba de alcohol como la lista de cotejo sobre los pasos operacionales. La justificación para objetar la admisibilidad de dicha prueba lo fue que el agente Carrasco no firmó la hoja de cotejo y de la mencionada tarjeta no se desprendía el número de serie de la máquina y la fecha, ya que no estaban impresos de manera legible.

El TPI decretó que los documentos eran inadmisibles, lo cual resultó favorable al apelante. El Ministerio Público hizo un ofrecimiento de esa prueba y argumentó que el testigo podía declarar sobre la autenticidad de los mismos, pero el TPI se reiteró en su determinación. Aún así, con la ausencia de dichos documentos, el TPI estimó

probada la culpabilidad del apelante más allá de duda razonable a base del testimonio del agente Carrasco y el perito químico, cuyo testimonio no está en controversia y el cual declaró que la máquina estaba calibrada al momento en que se le hizo la prueba al apelante, lo cual abona a la confiabilidad del resultado.

Por último, es preciso destacar que la defensa no objetó cuando, por vía de reconsideración, el TPI admitió que el agente Carrasco declarara sobre el resultado de la segunda prueba de aliento que se le hizo al apelante y cuyo resultado observado en el Intoxilyzer fue de .14%, a raíz de la segunda prueba que se le hizo al apelante.

Tal y como hemos esbozado, el presente caso se circunscribe a una cuestión de credibilidad sobre el estado de embriaguez en el cual se encontraba el apelante. Dicho estado fue descrito en detalle por el agente Carrasco, y amparado en un motivo fundado para así hacerlo, lo detuvo él el día de los hechos. A base de la corroboración entre los motivos mencionados y las observaciones a simple vista realizadas por él en cuanto al comportamiento exhibido por el apelante y su apariencia, el agente intervino, imputándole acto seguido la infracción discutida. El agente Carrasco y el químico, estuvieron sujetos al contra interrogatorio por parte de la defensa, la cual no pudo controvertir el estado de embriaguez sobre el .08% en que se encontraba el apelante.

Dicho testimonio pasó por el crisol judicial en lo relativo a su credibilidad. De acuerdo a ello, confirmamos la sentencia apelada mediante la cual se declaró culpable al apelante por el delito de conducir un vehículo de motor bajo los efectos de bebidas embriagantes con un contenido de alcohol en la sangre de ocho centésimas del uno por ciento (.08%), o más, en franca violación al Artículo 7.02 de la Ley 22, *supra*.

**IV**

En mérito de lo antes expuesto, confirmamos la sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2004 DTA 122**

**1.** Véase, *Alegato* de la parte apelante, página 7.

**2.** *Ibid,* pág. 7.