Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| NELSON GONZÁLEZ VEGA<br><br>Demandante-Recurrido<br><br>GLADYS GONZÁLEZ VEGA<br><br>Demandante-Peticionaria<br><br>V.<br><br>LEOPOLDO GONZÁLEZ VEGA<br><br>Demandado-Peticionario<br><br>JACKELINE BEAUCHAMP CRUZ<br><br>Demandada | TA2025CE00745 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm.: AG2021CV00124<br><br>Sobre: Desahucio en Precario |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 8 de diciembre de 2025.

El 10 de noviembre de 2025, compareció ante este Tribunal de Apelaciones la Sra. Gladys González Vega y el Sr. Leopoldo González Vega (denominados en adelante y en conjunto, parte peticionaria o peticionarios) por medio de *Certiorari*. Mediante el referido recurso, nos solicitan que revisemos la *Resolución* emitida y notificada el 5 de noviembre de 2025, por el Tribunal de Primera Instancia, Sala de Aguadilla. En virtud del aludido dictamen, el foro *a quo* declaró No Ha Lugar la *Moción de Nulidad de Sentencia (Regla 49.2)* presentada el 27 de octubre de 2025 por la parte peticionaria.

Por los motivos que se exponen a continuación, se expide el auto de *certiorari* y se confirma el dictamen recurrido.

## I

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Demanda de Desahucio*,[1] presentada por derecho propio, el 3 de febrero de 2021 por Nelson González Vega, en contra del señor Leopoldo González Vega. En el pleito original se incluyó como co demandante a la señora Gladys González Vega. Conforme surge del expediente, Nelson González Vega, Gladys González Vega y Leopoldo González Vega son hermanos y coherederos de una propiedad ubicada en el Barrio Palmar de Aguadilla.[2]

En la aludida *Demanda* se alegó que Leopoldo González Vega vivía en compañía de Jacqueline Beauchamp Cruz en la propiedad en controversia y que, estos últimos ocupaban la propiedad sin pagar renta. También, se afirmó la existencia de perros bravos en los predios que imposibilitaban la entrada al inmueble e impedían que la parte recurrida realizara arreglos a la propiedad con el fin de colocarla a la venta y proceder con su liquidación.

El 15 de septiembre de 2021, el licenciado Iván Cabán Soto asumió la representación legal mediante *Moción asumiendo representación legal,*[3] en la que indicó que, el señor Nelson González Vega había contratado sus servicios profesionales para que lo representara ante el Tribunal, por lo que peticionó al foro primario que aceptara dicha representación legal.

Mediante *Resolución* emitida y notificada del 23 de septiembre de 2021, el foro primario aceptó la representación legal peticionada.[4] Subsiguientemente, el 6 de octubre de 2021, el recurrido Nelson González Vega presentó una *Moción en solicitud de vista.*[5]

---

[1] Véase, Entrada 1, del expediente digital del caso AG2021CV00124, en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI). *Demanda de Desahucio.*
[2] Véase, Entrada 19, SUMAC-TPI. *Moción Informativa* presentada por Nelson González Vega el 29 de marzo de 2022. Anejos incluyen: *Planilla Caudal Relicto Generosa Vega*; *Planilla Caudal Relicto Leopoldo*; *Resoluci[ó]n Declaratoria Herederos*; *Resolución Decl. Herederos Leopoldo.*
[3] Véase, Entrada 5, SUMAC-TPI.
[4] Véase, Entrada 7, SUMAC-TPI.
[5] Véase, Entrada 8, SUMAC-TPI.

El 22 de octubre de 2021, notificada el 25 de octubre del mismo mes y año, mediante *Orden*,[6] el Tribunal señaló la vista para el 15 de diciembre de 2021. En la fecha dispuesta, se celebró la vista presencial y de acuerdo con la *Minuta*, emitida y notificada el mismo día[7], a la misma compareció la parte demandante representada por el Lcdo. Iván Cabán Soto, no así la parte peticionaria. Empero, por surgir del expediente que los señores Leopoldo González Vega y Jacqueline Beauchamp Cruz no habían sido emplazados, el foro *a quo* concedió un término para tal fin.

El 29 de marzo de 2022, Nelson González Vega presentó una *Moción informativa*,[8] en la que hizo contar que Leopoldo González Vega había sido debidamente emplazado e incluyó prueba del diligenciamiento. No obstante, del escrito no se desprende información alguna sobre el emplazamiento de la señora Jacqueline Beauchamp Cruz.

Posteriormente, el 29 de marzo de 2022, se celebró una vista presencial, a la cual, según consta en la *Minuta* archivada al día siguiente,[9] compareció el señor Nelson González Vega representado por el Lcdo. Iván Cabán Soto. Los señores Leopoldo González Vega y Jacqueline Beauchamp Cruz comparecieron sin representación legal. Se informó que la señora Gladys González Vega no compareció por estar delicada de salud. La *Minuta* también registró que el señor Nelson González Vega vertió su testimonio en Sala.

El **6 de abril de 2022**, notificada el **12 de abril del mismo mes y año**, el foro *a quo* emitió su *Sentencia Final*.[10] En ella, se establecieron los siguientes hechos:

1. Don Nelson González Vega es hermano de Gladys González Vega y Leopoldo González Vega, siendo hijos de Doña Generosa Vega Velázquez y Leopoldo González Medina.

---

[6] Véase, Entrada 11, SUMAC-TPI.
[7] Véase, Entrada 12, SUMAC-TPI.
[8] Véase, Entrada 18, SUMAC-TPI.
[9] Véase, Entrada 20, SUMAC-TPI.
[10] Véase, Entrada 23, SUMAC-TPI.

2. Que existe una residencia en el Barrio Palmar, Carr. 443 en Aguadilla, Puerto Rico, la cual fue residencia de sus padres.

3. El señor Leopoldo González Vega ha residido la casa sin pagar canon de renta alguno e impide que sus hermanos entren a la misma.

4. El demandado ha estado fuera de la estructura por estar sumariado.

5. No se estableció claramente el tiempo que el demandado ocupó la casa, no obstante, nadie está en dominio de la misma.

6. Al día de hoy, el demandado ocupa la estructura y reconoce [que] el patio está abandonado. Alega tiene derecho a ocupar la casa por él ser el único cuidador de la madre de ellos en sus años de enfermedad y trae asuntos familiares respecto al trato del (sic) demandante hizo con el demandado en sus años de juventud. Reconoce al salir de la cárcel el 7 de diciembre de 2021 regresó a la casa.

7. El demandante solicita se desocupe la casa para arreglar la misma y venderla.

8. No hay contrato de arrendamiento entre las partes.

9. El demandado trabaja y cobra $500.00 bisemanal.

Consecuentemente, el foro primario ordenó el "desahucio de Leopoldo González Vega y de toda persona que con él resida, una vez la Sentencia sea final y firme". No se estableció un canon de arrendamiento por no haberse establecido la existencia de un contrato. Adicionalmente, se impuso el pago de honorarios de abogado en $500.00.

Posteriormente, el 27 de junio de 2022, mediante *Orden* notificada al día siguiente, el foro *a quo* ordenó el desalojo de la propiedad en cuestión.[11] En consonancia con lo anterior, al día siguiente, 28 de junio de 2022, el foro primario expidió el *Mandamiento de Ejecución de Sentencia.*[12]

---

[11] Véase, Entrada 26, SUMAC-TPI.
[12] Véase, Entrada 27, SUMAC-TPI.

El 15 de septiembre de 2022, el peticionario Leopoldo González Vega presentó una *Moción por propio derecho*.[13] En síntesis, expresó que recibió tardíamente la correspondencia que incluía los términos para apelar. Sobre ello, manifestó lo siguiente:

> [...] La correspondencia me fue entregada tarde donde se establecía que me daba 5 días y al recibir a correspondencia había pasado 2 semanas de la misma. Yo no tengo conocimiento de los procesos y también no s[é] que tengo derecho a apelar dentro de 30 d[í]as y no los cinco d[í]as de la minuta. [...]

En vista de lo anterior, solicitó que se le aplazara el desahucio porque no tenía donde vivir.

El 3 de octubre de 2022, se diligenció la orden de lanzamiento.[14] Entre otras cosas, el trámite se describió como sigue:

> [...] La propiedad a ser entregada era una residencia la cual estaba vacía y deshabitada con basura en su interior.  La misma tenía servicio de luz, pero no de agua. El. Sr. González Vega cambió las dos cerraduras[,] demand[ó] la custodia de dicha propiedad. Por lo antes expresado se da por cumplida la orden del Tribunal.[...]

El 12 de octubre de 2022, el foro *a quo*, mediante *Resolución*, declaró No Ha Lugar la *Moción por derecho propio* presentada por el peticionario.

Tiempo después, el 20 de agosto de 2025, la peticionaria Gladys González Vega presentó una *Moción Declaración Juramentada*,[15] en la que, en síntesis, y "sin someterse a la jurisdicción del tribunal", explicó que, hacía dos semanas que se había enterado de que fue incluida como parte demandante en la *Demanda*. Indicó que, nunca requirió ser representada por el licenciado Iván Cabán Soto. Entre otras cosas, expresó que la casa en controversia ha sido la vivienda de su hermano Leopoldo González Vega de manera ininterrumpida. Indicó que, así lo quiere

---

[13] Véase, Entrada 28, SUMAC-TPI.
[14] Véase, Entrada 29, SUMAC-TPI.
[15] Véase, Entrada 33, SUMAC-TPI.

ella y lo quisieron sus fenecidos padres. Suplicó que, el tribunal tomara conocimiento de sus expresiones realizadas bajo juramento.

El 3 de septiembre de 2025, el recurrido Nelson González Vega incoó una *Moción de Desacato*.[16] Planteó que, el dictamen había advenido final, firme e inapelable. Alegó que, Leopoldo González Vega se empeñaba en continuar habitando la residencia.

El 23 de septiembre de 2025, y notificada al día siguiente, el foro primario emitió una *Resolución Interlocutoria*,[17] en la que, en síntesis, tomó conocimiento de lo alegado por Gladys González Vega.

El 1 de octubre de 2025, y notificada el mismo día, el foro *a quo*, mediante *Resolución Interlocutoria*,[18] le ordenó a peticionario Leopoldo González Vega a comparecer el 3 de noviembre de 2025 para mostrar causa por la cual no se debía encontrar incurso en desacato.

El 27 de octubre de 2025, la parte peticionaria instó *Moción de Nulidad de Sentencia (Regla 49.2)*.[19] En ella, los peticionarios le imputaron fraude a Nelson González Vega. Por ello, rogaron que se dejara sin efecto la *Sentencia* emitida el 12 de abril de 2022 y notificada el 16 del mismo mes y año.

El 29 de octubre de 2025, la parte recurrida instó la *Moción en Oposición a Otra presentada al Amparo de la Regla 49.2*.[20] En esencia, Nelson González Vega expresó que Leopoldo González Vega pretendía demorar el proceso de la división de la comunidad hereditaria.

El 3 de noviembre de 2025, se celebró una vista presencial. En cuanto a la moción solicitando relevo de sentencia, el foro *a quo*, mediante *Minuta*,[21] la declaró No Ha Lugar e indicó que

---

[16] Véase, Entrada 34, SUMAC-TPI.
[17] Véase, Entrada 35, SUMAC-TPI.
[18] Véase, Entrada 36, SUMAC-TPI.
[19] Véase, Entrada 40, SUMAC-TPI.
[20] Véase, Entrada 41, SUMAC-TPI.
[21] Véase, Entrada 45, SUMAC-TPI.

eventualmente, se notificaría por escrito. Finalmente, el 5 de noviembre de 2025, el foro primario emitió la *Resolución* cuya revisión nos atiene, en la cual dispuso lo siguiente:[22]

> Calendarizada Vista de Desacato comparece el Sr. Leopoldo González Vega representado por el Lic. Wilfredo Da Silva. La Sra. Gladys González representada por el Lic. Carlos E. Rivera y el Sr. Nelson Gonzalez representado por el Lcdo. Ángel. R. Cardona Ubiñas.
>
> Se argumentó sobre Moción de Nulidad de Sentencia antes de entrar al detalle de la Vista de Desacato.
>
> En Sumac 40 el 27 de octubre de 2025 la parte demandada y autodemanda plantea Nulidad de Sentencia bajo la Regla 49.2 de Procedimiento Civil. Basados en el Artículo 841 del Código Civil sobre Administración de la cosa común, argumenta que la Sentencia del 6 de abril de 2022 es nula por no haber consentimiento de Gladys González para que Nelson Gonzalez presentara la acción de Desahucio.
>
> Escuchados los argumentos de las partes, se decreta No Ha Lugar.
>
> La Regla 49.1 de Procedimiento Civil autoriza al Tribunal a rectificar errores de forma en la Sentencia o cualquier parte del expediente en cualquier momento, a iniciativa del tribunal o por petición de parte. Conde v. Resto 2020 TSPR 152. No obstante, no puede utilizarse para corregir errores de derecho que afecten los derechos sustantivos de parte. Otero vs. Schodey 2018 TSPR 56.
>
> Bajo la Regla 49.2 de Procedimiento Civil el término para solicitar el relevo es de 180 días. Transcurrido el término, el efecto es: no puede ser presentada. Término fatal.
>
> La parte plantea fraude por parte del demandante contra los otros comuneros. Las Reglas y jurisprudencia reconocen dos tipos de fraude: al tribunal y/o entre las partes. Aquí se plantea ser entre las partes.
>
> La Regla 49.2 F (3) establece que cuando se trata de fraude entre las partes nunca se podrá radicar esta moción luego de transcurridos los seis meses (180 días).
>
> Por tanto, No Ha Lugar. Respecto a la Vista de Desacato declaró [el] Sr. Nelson Gonzalez y luego de escuchados los argumentos de su representante legal el tribunal provocó un receso de 10 minutos para que el Sr. Leopoldo González Vega fuera orientado sobre las consecuencias de ser encontrado incurso en desacato civil.

---

[22] Véase, Entrada 44, SUMAC-TPI.

Se acordó lo siguiente:

a- El Sr. Leopoldo González Vega desocupa la propiedad perteneciente a la Sucesión en el día de hoy.

b- Sobre sus mascotas, aves y perros se provee autorización para ir en los próximos cinco días de 8:00 a.m. a 10:30 a.m. a darle alimentos, para lo cual tiene 5 días, hasta el sábado del corriente para moverlos a otro lugar que no sea un albergue.

c- Los bienes muebles permanecerán en el inmueble hasta la venta del mismo.

d- Del Sr. Leopoldo González incumplir el mismo podrá ser encontrado incurso en desacato.

Inconforme, el 10 de noviembre de 2025, la peticionaria presentó ante este foro revisor el recurso de *Certiorari* que nos ocupa, en el cual esgrimió el siguiente señalamiento de error:[23]

Erró el TPI al declarar No Ha Lugar la Moción de Nulidad de Sentencia al amparo de la Regla 49.2 de Procedimiento Civil de las de 2009 concluyendo que no hubo fraude al Tribunal cuando se le representó al TPI que la recurrente Gladys González Vega era co-demandante, validando así el consentimiento como comunera para la radicación de la acción de desahucio al amparo del Art. 841 del Código Civil de 2020.

El 24 de noviembre de 2025, la parte recurrida presentó ante este foro revisor la *Oposición a Petición de Certiorari en Cumplimiento de Orden.*[24]

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A. El Certiorari**

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape*

---

[23] Véase, Entrada 1, del expediente digital del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[24] Véase, Entrada 5, SUMAC-TA.

*et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[25]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025), dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008); *Pueblo v. Rivera Montalvo*, *supra*, pág. 372; *Torres González v. Zaragoza Meléndez*, *supra*, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, es

---

[25] Véase también *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 335-336 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, *supra*, pág. 97.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz de León*, *supra*, pág. 918, en referencia a *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Regla 49.2 de Procedimiento Civil

Como es sabido, toda sentencia dictada por un tribunal tiene a su favor una presunción de validez y corrección. *Olmeda Nazario v. Sueiro Jiménez*, 123 DPR 294 (1989); *Ortiz Serrano v. Ortiz Díaz*, 106 DPR 445 (1977); *Cortés Piñeiro v. Sucn. A. Cortés*, 83 DPR 685, 690 (1961). Solo en ciertos escenarios muy particulares nuestro ordenamiento procesal civil permite a una parte solicitar el relevo de

los efectos de una sentencia previamente dictada en su contra; asunto que, como sabemos, en nuestra jurisdicción es gobernado por la Regla 49.2 de las de Procedimiento Civil, 32 LPRA Ap. V. *López García v. López García,* 200 DPR 50, 59 (2018).

La Regla 49.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R.49.2, establece el mecanismo procesal que se tiene disponible para solicitarle al foro de instancia el relevo de los efectos de una sentencia cuando esté presente alguno de los fundamentos allí expuestos. Esta regla provee un mecanismo post sentencia para impedir que se vean frustrados los fines de la justicia mediante tecnicismos y sofisticaciones. (Citas omitidas). *García Colón et al. v. Sucn. González,* 178 DPR 527, 539 (2010); *Pérez Ríos et al. v. CPE,* 213 DPR 203, 214 (2023).

Este precepto procesal civil tiene como fin establecer el justo balance entre dos (2) principios de cardinal importancia en nuestro ordenamiento jurídico. Por un lado, el interés de que los casos se resuelvan en los méritos haciendo justicia sustancial. Por el otro, que los litigios lleguen a su fin. (Citas omitidas). *García Colón et al. v. Sucn. González,* pág. 540.

En particular, la Regla 49.2 de Procedimiento Civil, *supra,* dispone específicamente, como sigue:

> **Regla 49.2. Errores, inadvertencia, sorpresa, negligencia excusable, descubrimiento de nueva prueba, fraude, etc.**
>
> Mediante una moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las razones siguientes:
>
> (1) Error, inadvertencia, sorpresa, o negligencia excusable;
>
> (2) Descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;
>
> (3) Fraude (incluyendo el que hasta ahora se ha denominado intrínseco y también el llamado

extrínseco), falsa representación u otra conducta impropia de la parte adversa;

**(4)  Nulidad de la sentencia**;

(5)  La sentencia ha sido satisfecha, renunciada, o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continuare en vigor; o

(6)  Cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

Las disposiciones de esta regla no serán aplicables a las sentencias dictadas en pleitos de divorcio, a menos que la moción se funde en las razones (c) o (d) de esta regla. La moción se presentará dentro de un término razonable, pero en ningún caso después de transcurridos seis (6) meses de haberse registrado la sentencia u orden o haberse llevado a cabo el procedimiento.
[. . .]

Para que proceda el relevo de sentencia bajo la Regla 49.2 de Procedimiento Civil, *supra,* es necesario que el peticionario aduzca, al menos, una de las razones enumeradas en esa regla para tal relevo. El peticionario del relevo está obligado a justificar su solicitud amparándose en una de las causales establecidas en la regla. Ahora bien, relevar a una parte de los efectos de una sentencia es una decisión discrecional, salvo en los casos de nulidad o cuando la sentencia ha sido satisfecha. *García Colón et al. v. Sucn. González,* pág. 540; *Pérez Ríos et al. v. CPE,* supra, pág. 215.

Para conceder un remedio contra los efectos de una sentencia, el tribunal debe determinar si bajo las circunstancias específicas del caso existen razones que justifiquen tal concesión. Así, si la parte que solicita el relevo aduce una buena defensa –además de alguna de las circunstancias previstas en la Regla 49.2 de Procedimiento Civil, *supra,* ya mencionadas- y el relevo no ocasiona perjuicio alguno a la parte contraria, este debe ser concedido. De ahí que, como regla general la existencia de una buena defensa debe siempre inclinar la balanza a favor de la reapertura. *García Colón et al. v. Sucn. González,* supra, págs. 540-541.

Por igual, el Tribunal Supremo de Puerto Rico, ha expresado, con relación a la Regla 49.2 de Procedimiento Civil, *supra*: "que el precepto debe interpretarse liberalmente y cualquier duda debe resolverse a favor del que solicita que se deje sin efecto una anotación de rebeldía o una sentencia o, a fin de que el proceso continúe y el caso pueda resolverse en sus méritos". Empero, **la consabida regla no constituye una llave maestra para reabrir controversias, ni sustituye los recursos de apelación o reconsideración. Es decir, el precepto no está disponible para alegar cuestiones sustantivas que debieron ser planteadas mediante los recursos de reconsideración y apelación.** (Citas omitidas). *García Colón et al. v. Sucn. González,* supra, pág. 541.

Por otro lado, el inciso (4) de la Regla 49.2 de Procedimiento Civil, *supra,* le otorga al Tribunal la facultad de relevar a una parte de los efectos de una sentencia cuando se determine su nulidad. Una sentencia es nula cuando se ha dictado sin jurisdicción o cuando al dictarla *se ha quebrantado el debido proceso de ley.* (Citas omitidas). *García Colón et al. v. Sucn. González,* supra, pág. 543.

Es importante destacar que, bajo este fundamento no hay margen de discreción como lo hay bajo los otros fundamentos de la Regla 49.2 de Procedimiento Civil, *supra.* Si una sentencia es nula, tiene que dejarse sin efecto independientemente de los méritos que pueda tener la defensa o la reclamación del perjudicado. *Pérez Ríos et al. v. CPE,* supra, pág. 215. Sobre el particular, ha manifestado nuestro Tribunal Supremo que:

> "...la discreción que tiene un tribunal, al amparo de las disposiciones de la referida Regla 49.2 de Procedimiento Civil, para relevar a una parte de los efectos de una sentencia resulta inaplicable cuando se trata de una sentencia que es "nula"; si es nula, no hay discreción para el relevo, hay obligación de decretarla nula.
>
> Es inescapable la conclusión, en consecuencia, que ante la certeza de nulidad de una sentencia, resulta *mandatorio* declarar su inexistencia jurídica; ello independientemente del hecho de que la solicitud a

tales efectos se haga con posterioridad a haber expirado el plazo de seis (6) meses establecido en la antes citada Regla 49.2 de Procedimiento Civil. (Citas omitidas). *Montañez v. Policía de Puerto Rico*, 150 D.P.R. 917, 921-922 (2000). Véanse, *Bco. Santander P.R. v. Fajardo Farms Corp.*, 141 D.P.R. 237, [243-244] (1996); *Figueroa v. Banco de San Juan*, 108 D.P.R. 680, [689] (1979)." (Citas omitidas). *García Colón et al. v. Sucn. González*, supra, págs. 543-544.

### C. La acción de desahucio

El desahucio es el medio que tiene el propietario de un inmueble para recobrar judicialmente su posesión. *Markovic v. Meldon y otro*, 2025 TSPR 99, pág. 7, 216 DPR ____ (2025), citando a *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235, 240 (2018). El desahucio puede solicitarse en un proceso ordinario o en un proceso sumario. El desahucio sumario está reglamentado por los Arts. 620-634 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838. Esta reglamentación responde al interés del Estado en atender expeditamente la reclamación del dueño de un inmueble, cuyo derecho a poseer y disfrutar su propiedad ha sido interrumpido. *ATPR v. SLG Volmar-Mathieu*, 196 DPR 5, 9 (2016). *Adm. Vivienda Pública v. Vega Martínez*, 200 DPR 235, 240 (2018).

Así, el objetivo de esta acción especial es recuperar la posesión de hecho de un bien inmueble mediante el lanzamiento o la expulsión del arrendatario o precarista que lo detente sin pagar canon o merced alguna. *Fernández & Hno. v. Pérez*, 79 DPR 244 (1956). *ATPR v. SLG Volmar-Mathieu*, supra, pág. 10.

Es importante mencionar que, nuestra más Alta Curia ha expresado lo siguiente:

> La acción de desahucio en precario se da contra aquellas personas que disfrutan de la posesión de un inmueble sin derecho alguno para ello y sin pagar canon o merced alguna. Por lo tanto, bastará que un demandado en desahucio produzca prueba suficiente ante la corte para demostrar que tiene algún derecho a ocupar dicho inmueble y que tiene un título tan bueno o mejor que el del demandante para que surja un conflicto de título que haga improcedente la acción. *Escudero v. Mulero*, 63 DPR 574, 588-589 (1944).

Por otro lado, es preciso señalar que, mediante la Ley Núm. 86-2011, se enmendó el Artículo 629 del Código de Enjuiciamiento Civil, 32 LPRA § 2831, con el fin de reducir el término para apelar una sentencia de desahucio.

Dicho Artículo dispone específicamente lo siguiente:

Las apelaciones deberán interponerse en el término de cinco (5) días contados desde la fecha del archivo en autos de la notificación de la sentencia, por las partes perjudicadas por la misma o sus abogados.

En el antes citado estatuto, el legislador plasmó su clara intención en la Exposición de Motivos, que en su parte pertinente dispone:

Las personas que optan por ofrecer sus viviendas para alquiler son selectivas en el proceso, con el fin de minimizar su riesgo como arrendador. A manera de ejemplo, una de las principales quejas de éstos es que el trámite de desahucio resulta muy extenso en los tribunales, debido a, entre otras cosas, constantes suspensiones, lo que resulta en consecuencias desfavorables para el arrendador.

Como bien se puede apreciar, el término jurisdiccional de treinta (30) días para apelar las determinaciones de los tribunales de primera instancia se redujo en la nueva ley a cinco (5) días. El texto del Art. 629, según enmendado, dispone que "[l]as apelaciones deberán interponerse en el término de cinco (5) días contados desde la fecha de archivo en autos de la notificación de la sentencia, por las partes perjudicadas por la misma o sus abogados".

Así, la sentencia de desahucio, de conformidad con el artículo 630 del Código de Enjuiciamiento Civil, es final y firme al expirar el término de cinco (5) días desde que se notifica la misma a los demandados. *González v. López,* 69 DPR 944, 947 (1949).

### D. La comunidad hereditaria

Cuando existen dos o más llamamientos a la universalidad de la herencia se constituye lo que se conoce como una comunidad hereditaria. *Soc. de Gananciales v. Registrador,* 151 DPR 315, 317 (2000); *Cintrón Vélez v. Cintrón De Jesús,* 120 DPR 39, 48 (1987). La

comunidad hereditaria comprende todas las relaciones jurídicas patrimoniales del difunto excepto aquellas que, por su naturaleza o contenido, se extinguen con la muerte del causante. *Id. Vega Montoya v. Registrador*, 179 DPR 80, 87 (2010).

Los herederos comuneros no podrán reclamar derechos sobre bienes específicos del caudal hereditario hasta que se haya llevado a cabo la partición de herencia. *Soc. de Gananciales v. Registrador*, supra, pág. 320. A través de este procedimiento, se extinguirá la comunidad hereditaria, transformándose así las cuotas abstractas que poseen los herederos sobre el caudal relicto, en titularidades concretas sobre bienes determinados. *Arrieta v. Chinea Vda. de Arrieta*, 139 DPR 525, 534 (1995). En otras palabras, es el proceso mediante el cual los coherederos transformarán la cotitularidad que poseen sobre la totalidad de la herencia en títulos exclusivos sobre bienes particulares. *Vega Montoya v. Registrador*, supra, pág. 89.

Por lo tanto, mientras no se lleve a cabo la partición, ningún coheredero puede reclamar un derecho específico sobre un bien en particular, sino que solamente podrá exigir sus derechos sobre la totalidad del caudal relicto.[26]

Por otra parte, en cuanto al derecho de los coherederos a coposeer los bienes comunitarios, nuestro Tribunal Supremo en el caso *Díaz v. Aguayo*, 162 DPR 801, 812 (2004) citando a *Cintrón Vélez v. Cintrón De Jesús*, supra, pág. 50, indicó que:

> ". . . unos nietos coherederos, quienes vivían con su abuelo y lo cuidaron en su enfermedad, no estaban obligados, al fallecer éste, a pagar renta a los otros coherederos por el tiempo durante el cual continuaron viviendo en la casa del causante. Concluimos que dicha situación no configuraba un enriquecimiento injusto porque, "aunque los nietos coherederos forman parte de la comunidad hereditaria y poseyeron la casa del causante después de su muerte, *esa fue la vivienda de ellos por varios años antes de la muerte del testador, o sea, que tenían la posesión exclusiva de la casa desde antes*." (Énfasis en el original).

---

[26] *Id.*

Cónsono con lo anterior, la Máxima Curia añadió lo siguiente:[27]

> "Ahora bien, se trata, en el fondo, de poner de relieve que el *derecho a poseer* no es exclusivo de ningún comunero, sino que todos tienen derecho a *0* Mas siendo innegable que pueden coposeer efectivamente, pero que también no (es decir, que pueden no tener en su poder real todos los comuneros simultáneamente todas las cosas), lo que la jurisprudencia esa intenta es expresar que la tenencia real de alguna cosa común por un comunero solo, antes que ser considerada como posesión para él, debe de serlo como caso de ejercicio de la posesión de todos a través del él (servidor de la posesión de los demás, aparte de poseedor para sí por su parte) o como caso de posesión mediata de los demás a través de la posesión inmediata suya. Todo ello, *no obsta, sin embargo, a que cuando conste que el comunero poseedor, posee para sí, y no (también) como servidor de la posesión de los otros o mediador posesorio de los mismos, se le reconozca la posesión exclusiva a él de la cosa que sea* (con los efectos consiguientes *para él,* como *adquisición de frutos,* usucapión, etc.), si bien a los otros, mientras estén en plazo, les quepa mediante interdicto o acción reivindicatoria, recobrar la parte de posesión a que tienen derecho." (Subrayado nuestro). Manuel Albaladejo, Derecho Civil, Barcelona, Librería Bosch, 1979, Tomo V, Vol. I, p. 273. (Énfasis en el original).

En *Cintrón Vélez v. Cintrón De Jesús,* supra, pesó en el ánimo del Tribunal Supremo de Puerto Rico, "el hecho de que los comuneros fuesen coherederos nietos del causante que habían residido en el bien comunitario previo a su fallecimiento y habían cuidado a éste durante su enfermedad. Así, se entendió que la posesión se daba en función de su condición como coherederos en representación de la comunidad hereditaria". *Molina González v. Álvarez Gerena,* 203 DPR 442, 457 (2019).

Nuestra última instancia judicial ha resuelto también que, el uso exclusivo del bien común por uno sólo de los comuneros sin resarcir al otro es contrario a principios elementales de derecho, basados en la equidad, que no permiten el enriquecimiento injusto. Por igual, el Alto Foro ha reiterado en diversas ocasiones, que la

---

[27] *Cintrón Vélez v. Cintrón De Jesús,* supra, pág. 51.

doctrina de enriquecimiento injusto es un principio general "que opera en todo el ámbito del derecho" y es "un corolario del concepto de equidad, lo cual equivale a decir que es un corolario del concepto de justicia mismo." *Mun. Quebradillas v. Corp. Salud Lares*, 180 DPR 1003, 1019 (2011); *Silva v. Comisión Industrial*, 91 DPR 891, 898 (1965).

Esbozada la normativa jurídica, procedemos a aplicarla al recurso ante nuestra consideración.

### III

En su único señalamiento de error, la parte peticionaria sostiene que, el foro de primera instancia incidió al declarar No Ha Lugar la Moción de Nulidad de Sentencia al amparo de la Regla 49.2 de Procedimiento Civil de las de 2009, al concluir que no hubo fraude al Tribunal cuando se le representó al TPI que la recurrente Gladys González Vega era co demandante, validando así, el consentimiento como comunera para la radicación de la acción de desahucio al amparo del Art. 841 del Código Civil de 2020.

Según reseñáramos, el **6 de abril de 2022**, notificada el **12 de abril del mismo mes y año**, el Tribunal de Primera Instancia emitió *Sentencia Final.* Consecuentemente, el foro primario ordenó el "desahucio de Leopoldo González Vega y de toda persona que con él resida, una vez la Sentencia sea final y firme". No se estableció un canon de arrendamiento por no haberse establecido la existencia de un contrato. Adicionalmente, se impuso el pago de honorarios de abogado en $500.00.

Posteriormente, el **27 de junio de 2022**, mediante *Orden* notificada al día siguiente, el foro *a quo* ordenó el desalojo de la propiedad en cuestión.[28] En consonancia con lo anterior, al día

---

[28] Véase, Entrada 26, SUMAC-TPI.

siguiente, **28 de junio de 2022**, el foro primario expidió el *Mandamiento de Ejecución de Sentencia.*[29]

Conforme surge del expediente, la parte peticionaria no solicitó reconsideración ni apeló dicha sentencia dentro del término provisto por nuestro ordenamiento jurídico.

Si bien es cierto que, el **15 de septiembre de 2022**, el peticionario Leopoldo González Vega presentó una *Moción por propio derecho*, alegando[30] que recibió tardíamente la correspondencia que incluía los términos para apelar, no fue sino hasta el **27 de octubre de 2025**, que la parte peticionaria instó *Moción de Nulidad de Sentencia (Regla 49.2).*[31] En ella, los peticionarios le imputaron fraude a Nelson González Vega y rogaron que se dejara sin efecto la *Sentencia* emitida el 12 de abril de 2022 y notificada el 16 del mismo mes y año.

Tal cual reseñamos previamente, mediante la Ley Núm. 86-2011, se enmendó el Artículo 629 del Código de Enjuiciamiento Civil, 32 LPRA § 2831, con el fin de reducir el término para apelar una sentencia de desahucio.

Dicho Artículo dispone específicamente lo siguiente:

> Las apelaciones deberán interponerse en el término de cinco (5) días contados desde la fecha del archivo en autos de la notificación de la sentencia, por las partes perjudicadas por la misma o sus abogados.

En el antes citado estatuto, el legislador plasmó su clara intención en la Exposición de Motivos, que en su parte pertinente dispone:

> Las personas que optan por ofrecer sus viviendas para alquiler son selectivas en el proceso, con el fin de minimizar su riesgo como arrendador. A manera de ejemplo, una de las principales quejas de éstos es que el trámite de desahucio resulta muy extenso en los tribunales, debido a, entre otras cosas, constantes suspensiones, lo que resulta en consecuencias desfavorables para el arrendador.

---

[29] Véase, Entrada 27, SUMAC-TPI.
[30] Véase, Entrada 28, SUMAC-TPI.
[31] Véase, Entrada 40, SUMAC-TPI.

Como bien se puede apreciar, el término jurisdiccional de treinta (30) días para apelar las determinaciones de los tribunales de primera instancia se redujo en la nueva ley a cinco (5) días. El texto del Art. 629, según enmendado, dispone que "[l]as apelaciones deberán interponerse en el término de cinco (5) días contados desde la fecha de archivo en autos de la notificación de la sentencia, por las partes perjudicadas por la misma o sus abogados".

Así, la sentencia de desahucio, de conformidad con el artículo 630 del Código de Enjuiciamiento Civil, es final y firme al expirar el término de cinco (5) días desde que se notifica la misma a los demandados. *González v. López*, 69 DPR 944, 947 (1949).

Es necesario destacar que, conforme ha resuelto nuestro Tribunal Supremo, la Regla 49.2 de Procedimiento Civil **de ninguna forma sustituye el recurso de apelación**. Si la parte peticionaria no apeló dentro del término jurisdiccional para ello, está impedida de incluir en el recurso de epígrafe los argumentos ya resueltos por el foro primario de forma final y firme. En vista de lo anterior, razonamos que el foro *a quo* no cometió el error señalado.

Aclaramos que, lo aquí resuelto no es óbice para que, de así interesarlo, las partes lleven a cabo un procedimiento independiente de partición de herencia. *Soc. de Gananciales v. Registrador*, supra, pág. 320. A través de este procedimiento, se extinguirá la comunidad hereditaria, transformándose así las cuotas abstractas que poseen los herederos sobre el caudal relicto, en titularidades concretas sobre bienes determinados. *Arrieta v. Chinea Vda. de Arrieta*, 139 DPR 525, 534 (1995). En otras palabras, es el proceso mediante el cual los coherederos transformarán la cotitularidad que poseen sobre la totalidad de la herencia en títulos exclusivos sobre bienes particulares. *Vega Montoya v. Registrador*, supra, pág. 89.

Por lo tanto, mientras no se lleve a cabo la partición, ningún coheredero puede reclamar un derecho específico sobre un bien en particular, sino que solamente podrá exigir sus derechos sobre la totalidad del caudal relicto. (Citas omitidas). *Vega Montoya v. Registrador*, supra, pág. 89.

**IV**

Por los fundamentos expuestos, se expide el auto de C*ertiorari* y se *confirma* el dictamen recurrido.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones